PEOPLE v HARDIN

Docket No. 70736. Argued June 7, 1984 (Calendar No. 7).—Decided
December 28, 1984. Released February 1, 1985.

Tyrone V. Hardin was convicted by a jury in the Kent Circuit
Court, Stuart Hoffius, J., of assault with intent to do great
bodily harm less than murder and possession of a firearm
during the commission of a felony. The Court of Appeals, R. M.
Maher and Tahvonen, JJ. (M. J. Kelly, P.J., dissenting), re-
versed on the ground that supplemental instruction of the jury
when it was deadlocked substantially departed from the stan-
dard adopted by the Supreme Court and encouraged the jury to
reach a verdict (Docket No. 55791). The people appeal.

In an opinion by Justice Ryan, joined by Justices Brickley,
Cavanagh, and Boyle, the Supreme Court held:

The trial judge's instructions in this case do not substantially
depart from ABA standard jury instruction 5.4. Although the
rereading of the instruction as a supplemental instruction is
not a departure that is condoned, the trial judge's additional
comments did not constitute a substantial departure. The com-
ments were directed toward generating discussion and fostering
resolution of the case and avoided forcing a decision.

1. ABA standard jury instruction 5.4 was adopted for supple-
mental charges to a jury to ensure fair trials generally and
fewer retrials by reducing the coercive effect of such instruc-
tions. Departure from the standard is grounds for reversal. The
optimum instruction generates discussion directed toward the
resolution of a case, but avoids forcing a decision. If an instruc-
tion can cause a juror to abandon his conscientious dissent and
defer to the majority solely for the sake of reaching agreement,
it should not be used. Adoption of the ABA standard was not
designed to create or promote an appellate exercise in semantic
comparison as to whether the syntax and language of a given

REFERENCES FOR POINTS IN HEADNOTES
[1-6] 21 Am Jur 2d, Criminal Law § 303.
  76 Am Jur 2d, Trial § 1054 et seq.
  Instructions urging dissenting jurors in state criminal case to give
  due consideration to opinion of majority (Allen charge)—Modern
  cases. 97 ALR3d 96.

instruction comports with that of the ABA standard. The significance of a substantial departure as grounds for reversal is not just a difference in language, style, or syntax, but is the risk that the resultant instruction will be more coercive than the ABA instruction. The test for determining whether a departure from the ABA standard is substantial cannot rest simply on a gross difference in language. An instruction that departs from the ABA standard must also have an undue tendency of coercion. Coercion remains at the very heart of the inquiry as to whether a departure from the ABA standard is a substantial departure. Any other meaning would require appellate courts to devote their time and energy to an exercise in proofreading without regard to whether the instruction given was fair or unfair. Also relevant is whether the court required, or threatened to require, the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

2. In this case, the instructions were substantially the same as the ABA standard. The supplemental charge concerning penalty was a rereading verbatim of that given prior to deliberations. Additional statements by the trial judge, although not part of the ABA standard, were not a substantial departure from the standard. The statements did not coerce, encourage, or compel the jury to reach a verdict; the court did not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals; nor did they appeal to the jurors' civic duty. The overall effect of the instructions, rather, seemed to stress the need to engage in full-fledged deliberation. None of the additional instructions contained language that would have tended to force a decision or cause a juror to abandon a conscientious dissent and defer to the majority.

Chief Justice Williams, joined by Justices Kavanagh and Levin, dissenting, stated that in order to determine whether instruction of a deadlocked jury is a substantial departure from the standard approved by the Supreme Court, the language of the instruction must be examined to determine whether it goes beyond the language of the standard so as to encourage the jury to reach a verdict or whether it tends to negate the standard on proper deliberation, impartial consideration, and adherence to honest conviction. Coercion can be proof of a substantial departure, but lack of coercion proves nothing.

1. Before a jury retires for deliberation, the court may give an instruction which informs the jury that in order to return a verdict, each juror must agree to it; that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment; that each juror must personally decide

the case, but only after an impartial consideration of the evidence with the other jurors; that in the course of deliberations, a juror should not hesitate to reexamine his own views and change an opinion if convinced that it is erroneous; and that no juror should surrender an honest conviction as to the weight or effect of the evidence solely because of the opinion of the other jurors, or for the mere purpose of returning a verdict. If it appears to the court that the jury has been unable to agree, the court may require the jury to continue its deliberations and may give or repeat any portion of the instruction. The court may not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals. The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement.

2. The jury instruction standard was adopted to avoid the possibility that supplemental instructions might be coercively worded and to establish a justly balanced test which recognized both the need for juror independence and the need to reach verdicts. Instructions to deadlocked juries that are challenged are reviewed solely according to whether they substantially depart from the adopted standard. Lack of coercion in an instruction is not relevant in determining whether there was a substantial departure.

3. The test to explicate the term "substantial departure" with respect to the instruction standard is: whether the language of instruction goes beyond the language of the standard so as to encourage the jury to reach a verdict or whether it tends to negate the standard on proper deliberation, impartial consideration, and adherence to honest conviction. Coercion may be proof of substantial departure from the standard, but lack of coercion proves nothing.

4. In this case, the combined effect of the series of instructions amounted to a substantial departure from the standard. The net effect of instructing the jury that it had been presented with all the facts and that the court was sure that the jury would be able to reach a verdict and of reiteration that the jury should not be concerned with possible penalties was to encourage the jury to reach a verdict.

Reversed.

121 Mich App 355; 328 NW2d 416 (1982) reversed.

OPINION OF THE COURT

1. CRIMINAL LAW — JURY INSTRUCTIONS — DEADLOCKED JURIES.

Supplemental instruction of a deadlocked jury must not substan-

tially depart from the standard adopted by the Supreme Court; substantial departure from the standard is grounds for reversal, and the test for determining whether a departure is substantial is whether the instruction had an undue tendency to coerce a decision (ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury [Approved Draft, 1968], Standard 5.4).

2. CRIMINAL LAW — JURY INSTRUCTIONS — DEADLOCKED JURIES.

The optimum instruction of a deadlocked jury should generate discussion directed toward the resolution of a case, but should avoid forcing a decision; where an instruction could cause a jury to abandon conscientious dissent and defer to the majority solely for the sake of reaching agreement, it should not be used (ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury [Approved Draft, 1968], Standard 5.4).

DISSENTING OPINION BY WILLIAMS, C.J.

3. CRIMINAL LAW — JURY INSTRUCTIONS — DEADLOCKED JURIES.

*In order to determine whether instruction of a deadlocked jury is a substantial departure from the standard approved by the Supreme Court, the language of the instruction must be examined to determine whether it goes beyond the language of the standard so as to encourage the jury to reach a verdict or whether it tends to negate the standard on proper deliberation, impartial consideration, and adherence to honest conviction; coercion can provide proof of a substantial departure, but lack of coercion proves nothing (ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury [Approved Draft, 1968], Standard 5.4).*

4. CRIMINAL LAW — JURY INSTRUCTIONS — DEADLOCKED JURIES.

*Before a jury retires for deliberation, the court may give an instruction which informs the jury that in order to return a verdict, each juror must agree to it; that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment; that each juror must personally decide the case, but only after an impartial consideration of the evidence with the other jurors; that in the course of deliberations, a juror should not hesitate to reexamine his own views and change an opinion if convinced that it is erroneous; and that no juror should surrender an honest conviction as to the weight or effect of the evidence solely because of the opinion of the other jurors, or for the mere purpose of returning a verdict;*

*if it appears to the court that the jury has been unable to agree, the court may require the jury to continue its deliberations and may give or repeat any portion of the instruction; the court may not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals; the jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement (ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury [Approved Draft, 1968], Standard 5.4).*

5. CRIMINAL LAW — JURY INSTRUCTIONS — DEADLOCKED JURIES.

*Instructions to deadlocked juries that are challenged are reviewed solely according to whether they substantially depart from the adopted standard; lack of coercion in an instruction is not relevant in determining whether there was a substantial departure (ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury [Approved Draft, 1968], Standard 5.4).*

6. CRIMINAL LAW — JURY INSTRUCTIONS — DEADLOCKED JURIES.

*Instruction of a deadlocked jury that it had been presented with all the facts and that the trial court was sure that the jury would be able to reach a verdict and reiteration of an instruction that the jury should not be concerned with possible penalties that the defendant could receive if found guilty were a substantial departure from the standard adopted by the Supreme Court for instruction of deadlocked juries and had the combined effect of encouraging the jury to reach a verdict (ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury [Approved Draft, 1968], Standard 5.4).*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *David H. Sawyer,* Prosecuting Attorney, and *Timothy K. McMorrow,* Chief Appellate Attorney, for the people.

*George S. Buth* for the defendant.

RYAN, J. *(for reversal).* We are asked to refine further our decision in *People v Sullivan,* 392 Mich 324; 220 NW2d 441 (1974), in which we adopted, prospectively, ABA standard jury instruction 5.4 for use as supplemental instructions to

deadlocked juries. In *Sullivan,* we renounced future use of the *"Allen"* charge, *Allen v United States,* 164 US 492; 17 S Ct 154; 41 L Ed 528 (1896); we adopted ABA standard jury instruction 5.4; and we asserted that "[a]ny substantial departure [from ABA standard jury instruction 5.4] shall be grounds for reversible error." 392 Mich 341-342.

The opinion for affirmance holds that the deviation from ABA standard jury instruction 5.4 in this case constitutes a "substantial departure," and it would affirm the Court of Appeals reversal of the defendant's conviction. We disagree, and we therefore reverse the judgment of the Court of Appeals and reinstate the defendant's conviction.

## I. FACTS

Defendant was charged with assault with intent to murder, MCL 750.83; MSA 28.278, possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2), and carrying a concealed weapon, MCL 750.227; MSA 28.424.

In the early afternoon hours of October 30, 1979, Grand Rapids Police Officer John Kuipers, after hearing a dispatch report concerning an armed robbery, began to follow a Buick with three people inside, one of whom wore clothing similar to that described in the dispatch. Although Officer Kuipers activated the overhead lights on the police cruiser and sounded the horn, the Buick sped up. Kuipers chased the Buick for several minutes, and he eventually rammed it with the police cruiser. After Kuipers got out of the car, all three occupants of the Buick began firing guns at Kuipers.

Two of the occupants, later identified as Henry Thomas and Michael Long, ran from the car. The remaining occupant, later identified as defendant

Tyrone Victor Hardin, was apprehended. At trial, defendant Hardin did not testify, although he did present a defense essentially to the effect that, although he was in the car, he did not do any shooting, and, in fact, had attempted to get the driver of the car to stop during the chase.

The jury began deliberation at 2:26 p.m. on August 27, 1980, and rendered its verdict on August 29, 1980, at 11:50 a.m. Between the time the jurors began deliberating and the time they rendered their verdict, the jury was returned to the courtroom on five occasions and given additional or supplemental instructions. The jury found the defendant guilty of the lesser included offense of assault with intent to do great bodily harm less than murder, MCL 750.84; MSA 28.279, carrying a concealed weapon, and felony-firearm. He was sentenced to the mandatory two-year term for felony-firearm, two and one-half to five years for carrying a concealed weapon, and six and one-half to ten years for the assault with intent to do great bodily harm less than murder.

Defendant appealed to the Court of Appeals. A divided Court of Appeals panel reversed the convictions. 121 Mich App 355; 328 NW2d 416 (1982). This Court granted leave, 417 Mich 1040 (1983), "limited to the question of whether the supplemental instructions given the jury substantially departed from the American Bar Association's recommended standard jury instructions to be given to a 'deadlocked' jury. See *People v Sullivan,* 392 Mich 324; 220 NW2d 441 (1974)."

## II. JURY INSTRUCTIONS

The sole issue, which concerns the supplemental jury instructions given after the jury initially retired for deliberation, is better understood if we

set forth, in some detail, the events that tran-
spired.

The closing statements by counsel were com-
pleted during the morning of August 27, 1980. The
trial judge began giving jury instructions at 1:36
p.m., and he concluded at 2:20 p.m., at which time
the jury retired. At 2:23 p.m., the jury was re-
turned to the courtroom in order to give the jury
additional instructions relative to codefendant
Thomas. The jury then retired at 2:25 p.m., and
commenced deliberations at 2:26 p.m. The jury
again returned to the courtroom at 5:39 p.m.
without having rendered a verdict, and they re-
cessed for the day. The jurors agreed to meet at
9:30 a.m. the next morning.

Although it is unclear exactly when the jury
began deliberations the next day, August 28, 1980,
they were returned to the courtroom at 10:25 a.m.
The trial judge read aloud a statement the jurors
had submitted to him—"We are confused on the
judge's instructions regarding intent." The judge
reread instructions regarding intent. The jury
commenced deliberations at 10:30 a.m., but they
were returned to the courtroom at 2:19 p.m. At
that time, the following occurred:

*"The Court:* Members of the jury, I have the fore-
man's question. And it reads as follows: 'We cannot
come to a decision. Is it possible for me as foreman to
speak to the Judge?'

"I should inform you, Madam Foreman, it is not
proper for the Court to communicate with any of you
except as a whole. And I can answer any questions that
you do have. I gather you are having a problem reach-
ing a decision. And so let me read some additional
instructions to you because you have heard all the facts
that there are in this case. And I am sure with consid-
eration and thought, that you will be able to arrive at a
verdict. But we have some instructions I will give you
in addition to those I have given you before.

"All of the facts have been presented to you. You have heard the arguments of excellent counsel on both sides. And so there is nothing more to be presented other than what there has been here up until now. It is your duty to consult with your fellow jurors and to deliberate with a view to reaching an agreement, if you can do so without violating your own judgment. Before deciding the case, give impartial consideration to the view of your fellow jurors. This means you should give respectful consideration to one another's views, talk over differences of opinion in a spirit of fairness and frankness.

"It is natural that differences of opinion will arise. When they do, each of you should not only express your own opinion, but also the facts and reasons upon which you base it. By reasoning the matter out, it is often possible for all the jurors to agree.

"In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if you are convinced that it is wrong. However, none of you should surrender your honest conviction as to the weight and the effect of the evidence or the lack of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

"I have also told you do not concern yourselves during the trial or in your deliberations with what the penalty might be if you should find the defendant guilty. The question of guilt and the question of penalty are decided separately. It is the duty of the Judge to fix the penalty whenever a defendant is found guilty. Possible penalties should not influence your decision.

"Now, with that, I am going to ask that you return to the jury room. But before you do so, why don't you take a 15-minute break and go down and get some refreshments, if you want to, and return to the jury room in 15 minutes and see if you can't give further consideration to this. Thank you very much."

This will be referred to as the "first instruction."

The jury then retired at approximately 2:22 p.m. The trial judge inquired of counsel whether there were any objections, and was told there were none.

The jury again was returned to the courtroom at 3:48 p.m. Although the record does not indicate that the jury had posed any question, the trial judge gave the following instruction ("second instruction"):

*"The Court:* Members of the jury, I realize again you have not reached a verdict on all of the charges here involved. And I am sorry to feel I have to do this, but I feel you must give further consideration to this before I can accept a verdict. You have indicated you have not reached a verdict on both defendants on all of the charges. You have got all of the facts there are, and so you will just have to keep on deliberating and see if you can't reach a verdict. And so if you would like to go downstairs again, I will let you do that. No? Then please see if you can't reach a verdict. You have been out, in effect, probably six or seven hours. And I think you have read often about juries being out considerably longer than that when they have reported a verdict. So I am just going to ask you to please go back. I can read the same instructions, but it would just be the same. So I will ask you to please try. If there is any exhibit that you want, we can get that for you. I guess that is as much as I can tell you. Thank you."

The jury then retired at 3:50 p.m.

However, at 5:16, the jury was again returned to the courtroom, where the following ("third instruction") occurred:

*"The Court:* Members of the jury, once again I realize you have indicated you were having trouble in reaching a verdict. But Madam Foreman, if I gave you a few more minutes, do you think you could arrive at a verdict?

*"The Foreman:* (Indicating negatively.)

*"The Court:* Madam Foreman, let me ask you this. Without indicating where you stand on anything, have you been able to agree on the verdict on the charges on either one of the defendants?

"*The Foreman:* On one count.

"*The Court:* Just one count but not on the other charges?

"*The Foreman:* No.

"*The Court:* Then I am sorry. And I think you are learning being a juror is a very difficult job, as any type of judging is. But I am going to ask that you retire now. And we will recess the matter until 9:30 tomorrow morning and ask you all report here promptly at 9:30. Perhaps after a night's sleep and breakfast in the morning, you will be able to come back and reach a verdict.

"In the meantime, let me caution you try not to discuss it, and take it off your minds, and wait until you get back here in the morning. Maybe with a refreshed mind in the morning, you will be able to reach a verdict. You may retire. Be sure you sign out before you leave.

"Thank you. And have a pleasant evening."

The jury adjourned for the day at 5:17 p.m.

At 11:50 a.m. the next day, August 29, 1980, the jury rendered a verdict. As to defendant Hardin, the jury found him guilty of assault with intent to do great bodily harm less than murder, felony-firearm, and carrying a concealed weapon.

III. PROCEEDINGS BELOW

The trial judge, on five occasions, gave supplemental instructions after the jury retired for the first time for jury deliberations that spanned three days. The first supplemental instruction concerned defendant Thomas, whose case is not before us. The second supplemental instruction concerned intent, an instruction not of concern to either party. However, the last three supplemental instructions, quoted in full, *supra,* are the subject of this appeal. Defendant Hardin did not object to the giving of any of the supplemental instructions.

After the verdict of guilty, defendant appealed to the Court of Appeals, which reversed his conviction. A majority of the Court of Appeals stated:

"In *People v Allen,* 102 Mich App 655; 302 NW2d 268 (1981), *lv den* 411 Mich 870 (1981), this Court declared that in *People v Sullivan,* 392 Mich 324; 220 NW2d 441 (1974), the Supreme Court
" 'intended to announce a prophylactic rule eliminating the necessity of future appellate inquiry into the coercive effect of any number of possible variants on the *Allen* charge. One form was approved, and the Court clearly indicated its intent that only that form be used in the future. Because the new rule was made prospective, *Allen*-type charges in trials occurring before *Sullivan* were still subject to a case-by-case analysis, but the only case-by-case inquiry necessary in trials taking place after *Sullivan* involves whether the instruction given is a "substantial departure" from the ABA charge.' *Allen, supra,* pp 658-659." *People v Hardin,* 121 Mich App 355, 360-361; 328 NW2d 416 (1982).

The majority further asserted that "any language employed by the trial court aimed at encouraging the jury to reach a decision constitutes a substantial departure from the ABA charge unless the ABA standard instruction sanctions such a charge. Coercive effect is irrelevant." *Id.* Although conceding that most of what the trial judge said was in conformance with the ABA charge, and that the defendant's failure to object to the trial court's instruction did not preclude appellate review, the Court of Appeals majority, relying on the judge's statement that "he was sure that they would be able to arrive at a verdict, that all of the facts had been presented to them, and that they should not concern themselves with what the penalty might be if they should find the defendant guilty," reversed the defendant's conviction since the remarks were aimed at encouraging the jury

to reach a verdict. "We believe that these remarks constitute a substantial departure from the ABA charge." *Id.,* p 361.

Judge KELLY dissented. Although he asserted that the majority correctly found that the failure of the defendant to object did not preclude appellate review and that the focus on appellate review is on whether the trial court's charge was a "substantial departure" from ABA jury standard 5.4, he stated that "[i]t is important to note, however, that language used by a trial court which is not precisely within the scope of the ABA instructions is not grounds for reversal unless that language amounts to a *substantial* departure from the ABA instruction. Not every 'departure' is a 'substantial departure.' To equate the two would render meaningless the word 'substantial.'" Judge KELLY further asserted that the proper focus, in determining whether language employed by the trial court was a substantial departure from the ABA instructions, was whether the trial court's additional remarks tended to negate the instructions on proper deliberation, impartial consideration, and adherence to honest conviction which are at the heart of the ABA instruction. Thus, the dissenting judge found that the trial court's remarks were not a substantial departure from the ABA instructions, and that the defendant's convictions should be affirmed.

IV. ANALYSIS

The so-called *Allen* charge derived its name from *Allen v United States,* 164 US 492; 17 S Ct 154; 41 L Ed 528 (1896), wherein the Supreme Court of the United States sanctioned the use of an instruction approved in *Commonwealth v Tuey,*

62 Mass (8 Cush) 1 (1851).[1] This Court, in *People v Sullivan, supra,* noted that the use of the *Allen* charge had long been part of this state's jurisprudence. In *People v Sullivan,* the supplemental instruction given[2] was, in essence, the same in-

[1] The Supreme Court of the United States said:

"While, undoubtedly, the verdict of the jury should represent the opinion of each individual juror, it by no means follows that opinions may not be changed by conference in the jury-room. The very object of the jury system is to secure unanimity by comparison of views, and by arguments among the jurors themselves. It certainly cannot be the law that each juror should not listen with deference to the arguments and with a distrust of his own judgment, if he finds a large majority of the jury taking a different view of the case from what he does himself. It cannot be that each juror should go to the jury-room with a blind determination that the verdict shall represent his opinion of the case at that moment; or, that he should close his ears to the arguments of men who are equally honest and intelligent as himself. There was no error in these instructions." *Allen v United States,* 164 US 492, 501-502; 17 S Ct 154; 41 L Ed 528 (1896).

[2] The instruction given in *People v Sullivan,* 392 Mich 327-329, the substance of which was the same as that approved in *Commonwealth v Tuey,* 62 Mass (8 Cush) 1 (1851) and *Allen v United States, supra,* read as follows:

"Our laws assume that in the process of deliberation and discussion it will be possible for twelve minds to meet, to reach a consensus in which all twelve participated. Now, if this assumption proves to be incorrect in case after case, our system of jury trials as we know it will have broken down and there would have to be some other system devised to replace it. Recognizing this, the high court of our State and I should have said the highest of our State and the highest court of our Nation approves of an instruction by the trial Judge concerning efforts on agreement. The only mode provided by our Constitution and laws for deciding questions of fact in criminal cases, is by the verdict of a jury. In a large proportion of cases, and perhaps, strictly speaking, in all cases, absolute certainty cannot be attained or expected. Although the verdict to which a juror agrees must of course, be his own verdict, the result of his own convictions, and not a mere acquiescence in the conclusion of his fellows, yet, in order to bring twelve minds to a unanimous result, you must examine the questions submitted to you with candor and with a proper regard and deference to the opinions of each other.

"You should consider that the case should, at some time, be decided; that you are selected in the same manner, and from the same source, from which any future jury must be; and there is no reason to suppose that the case will ever be submitted to twelve men and women more intelligent, more impartial, or more competent to decide it, or that more or clearer evidence will be produced on the one side or the other. And, with this in view, it is your duty to decide the case if you can conscientiously do so without surrendering your conscientious belief.

struction that had been given and approved in *Commonwealth v Tuey,* and *Allen v United States.* This Court refused to find the *Allen*-type charge either coercive per se or coercive as applied in that case.

After reviewing the history of the *Allen* charge, both within and without the State of Michigan, this Court approved and adopted ABA standard jury instruction 5.4 for use prospectively from the date of that opinion.[3]

"Now, in order to make a decision more practicable and easier to arrive at, the law places the burden of proof on one party in a criminal case and that party is the Prosecution and as I was going to say, the Prosecution is the Prosecuting Attorney. The law imposes that burden on the Prosecution. That burden is upon the Prosecution to establish every part of its case beyond a reasonable doubt and if, at any part of it you're left with a reasonable doubt, the Defendant is entitled to the benefit of that doubt and must be acquitted.

"But, in conferring together, you ought to pay proper respect to each other's opinions and listen, with a disposition to be convinced of each other's arguments.

"And, if on the one hand if much the larger number of your panel are for a conviction, a dissenting juror should consider whether a doubt in his own mind is a reasonable one which makes no impression upon the minds of so many men equally honest, equally intelligent with himself and who have heard the same evidence, with the same attention, with an equal desire to arrive at the truth and under the sanction of the same oath.

"If, on the other hand, if a majority are for acquittal, the minority ought seriously to ask themselves whether they may not reasonably, and ought not to doubt the correctness of a judgment which is not concurred in by most of those with whom they are associated and distrust the weight of sufficiency of that evidence which fails to carry conviction to the minds of their fellows.

"Now, I ask you to try conscienciously *[sic]* and honestly in your own convictions, to try to arrive at a verdict. If you can arrive at a verdict in individual good conscience, do so."

[3] ABA standard jury instruction 5.4 reads:

"Length of deliberations; deadlocked jury.

"(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

"(i) that in order to return a verdict, each juror must agree thereto;

"(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

"(iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

This Court concluded:

"Although the majority of state and Federal jurisdictions still approve an *Allen*-type supplemental charge, an increasing number of courts have found an inherent danger in the possibility that the charge may be coercively worded and applied in some cases. In order to insure fair trials generally and fewer retrials, the better practice has been deemed by many to be that found in ABA standard jury instruction 5.4. We agree in that conclusion and in the proclivity of the various courts to adopt the standard for future use.

"Concluding from the standards generally approved by both Federal and state courts and by Michigan precedent, we cannot find the supplemental charge given herein coercive per se. Nor can we objectively say that it was applied coercively in this case or resulted in a coerced verdict. In fact, the great care insured by the trial judge and the extensive thought evidenced by the jury in asking for reinstructions as to particular verdicts produced a verdict quite appropriate to the admitted facts. The totality of this long trial based upon the state of the law at that time precludes any finding of error by the judge or deprivation of constitutional rights of the defendant.

"However, we are persuaded that any possible future danger of coercive effect by the giving of an *Allen*-type charge is one which can and should be avoided. An analysis of recent cases and commentaries confirms our belief that the better practice is to be found in the recommended ABA jury standard 5.4.

---

"(iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

"(v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

"(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

"(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement." *People v Sullivan,* 392 Mich 335.

*"Therefore, prospectively from the date of this opinion, the ABA standard jury instruction 5.4 as set forth herein is adopted by this Court. Any substantial departure therefrom shall be grounds for reversible error." People v Sullivan,* 392 Mich 341-342. (Emphasis supplied.)

Thus, this Court, in *People v Sullivan,* recognized that an increasing number of courts have found an inherent danger in the *possibility* that the *Allen* charge *might* be coercively worded and applied in some cases.

This Court noted that proper supplemental instructions serve a positive end, and further that courts must guard against coercion. 392 Mich 333-334. We also quoted a commentator for the proposition that a supplemental instruction is proper only if it serves to start further deliberation, and if the charge has the effect of forcing a juror to surrender an honest conviction, it is coercive and constitutes reversible error. "The optimum instruction will generate discussion directed towards the resolution of the case but will avoid forcing a decision. . . . If the instruction given 'can cause a juror to abandon his conscientious dissent and defer to the majority solely for the sake of reaching agreement,' then that charge should not be used. Such results obviously have no place in a fair criminal justice system." 392 Mich 334. See, generally, Anno: *Instructions urging dissenting jurors in state criminal case to give due consideration to opinion of majority (Allen charge)—Modern cases,* 97 ALR3d 96.

Our colleagues in the opinion for affirmance, err when they assert:

"We find that our decision in *Sullivan* could be no clearer in its directive that deadlocked jury instructions in cases arising *after Sullivan* are no longer to be

reviewed by a case-by-case inquiry into their coercive effect but solely by the standard of substantial departure from the ABA approved charge. We hold, therefore, that to the extent some Court of Appeals cases have indicated that lack of coercion is relevant in determining whether there is substantial departure, we specifically disapprove that language as inconsistent with our decision in *Sullivan.*"

There is absolutely no indication in *People v Sullivan* that coercion is not a relevant inquiry. In *Sullivan,* we simply held that the coercive effect of an *Allen* charge can be eliminated. Moreover, our statement to the effect that substantial departure from ABA instruction 5.4 shall be grounds for reversible error does not eliminate the relevancy of coercion to the ascertainment of whether the departure is "substantial."

Indeed, in *People v Goldsmith,* 411 Mich 555; 309 NW2d 182 (1981) (per curiam), this Court impliedly recognized that even ABA instruction 5.4 was somewhat coercive. We issued the opinion in *People v Goldsmith* to make it clear that a proper *Sullivan* instruction may be given as part of the main charge to the jury. We asserted that the effect of delivering the ABA charge prior to deliberation differed from its effect when given in a deadlocked situation. "When given during the original instructions, the ABA charge's *coercive impact* upon the jury is greatly diminished." *Id.,* p 559 (emphasis supplied).

In essence, this Court jettisoned the *"Allen"* charge in favor of ABA standard jury instruction 5.4 because of its potential for coercive effect. The ABA instruction is not without its coercive tendencies, but this Court prescribed the less coercive ABA standard jury instruction. Contrary to some case law, we did not announce a prophylactic rule eliminating the necessity of future appellate in-

quiry into the coercive effect of any possible variants on the *Allen* charge. Moreover, we never asserted that the only case-by-case inquiry necessary on trials taking place after *Sullivan* is whether the instruction given is a "substantial departure" from the ABA charge. Nor did we assert that coercive effect is irrelevant. *Contra, People v Allen,* 102 Mich App 655, 658-659; 302 NW2d 268 (1981), *lv den* 411 Mich 870 (1981); *People v Johnson,* 112 Mich App 41, 46-49; 314 NW2d 794 (1981); *People v Atkinson,* 120 Mich App 723, 726-729; 328 NW2d 102 (1982).

This Court simply stated that any substantial departure from ABA standard jury instruction 5.4 "shall be grounds for reversible error." Our adoption of ABA standard 5.4 was not designed to create or promote an appellate exercise in semantic comparison as to whether the syntax and language of a given instruction comports with that of ABA standard 5.4. The significance of a "substantial *departure*"—*i.e.,* one which is grounds for reversible error—is not just a difference in language, style, or syntax. The significance of a "substantial departure" is the risk that the resultant instruction will be more coercive than the ABA instruction. The test for determining whether a departure from ABA standard 5.4 is substantial cannot rest simply on a gross difference in language. The instruction that departs from ABA standard 5.4 must also have an undue tendency of coercion—*e.g.,* could the instruction given cause a juror to abandon his conscientious dissent and defer to the majority solely for the sake of reaching agreement?

Thus, coercion is at the very heart of the inquiry of whether a departure from ABA standard jury instruction 5.4 is a "substantial departure." Any other meaning would require appellate courts to

devote their time and energy to an exercise in proofreading without regard to whether the instruction given was fair or unfair. In fact, we have not yet considered whether ABA standard jury instruction 5.4, if applied strictly, would be coercive under certain circumstances. As we noted in *People v Sullivan,* to determine whether the *Allen* instruction has a coercive influence on the jury, the charge must be examined in the factual context in which it is given.

The same is applicable to ABA standard jury instruction 5.4. Where additional language contains "no pressure, threats, embarrassing assertions, or other wording that would cause this Court to feel that it constituted coercion," *People v Holmes,* 132 Mich App 730, 749; 349 NW2d 230 (1984), that additional language rarely would constitute a substantial departure. See also *People v Bookout,* 111 Mich App 399, 404; 314 NW2d 637 (1981), where the Court stated:

"The trial judge deviated from strictly complying with the ABA jury instructions. Concededly, the trial judge would be well-advised to use the jury instructions endorsed in *Sullivan* as enunciated by the ABA. The trial judge's deviation, although not condoned, was harmless. The spirit of the ABA instruction still is satisfied here. The overall impact of the instruction was not to coerce the jury, but to stress the need to engage in full-fledged deliberations while maintaining the integrity of the judicial system. The language used does not fall within the Supreme Court's rule of 'substantial departure' so as to require reversal."

See also *People v Robert G Thompson,* 81 Mich App 348, 353-354; 265 NW2d 632 (1978), *aff'd sub nom on other grounds People v Aaron,* 409 Mich 672; 299 NW2d 304 (1980); *People v Harman,* 98 Mich App 541, 542-543; 296 NW2d 303 (1980), *rev'd* 411 Mich 1083; 312 NW2d 83 (1981).

Whether any deviation from ABA standard jury instruction 5.4 is substantial in the sense that reversal is required depends upon whether the deviation renders the instruction unfair because it might have been unduly coercive. There can be no doubt, therefore, that coercion is a relevant inquiry in determining whether the departure was substantial. To reiterate what we stated in *People v Sullivan,* "The optimal instruction will generate discussion directed towards the resolution of the case but will avoid forcing a decision. If the instruction given 'can cause a juror to abandon his conscientious dissent and defer to the majority solely for the sake of reaching agreement,' then that charge should not be used." 392 Mich 334. Also relevant is whether the court required, or threatened to require, the jury to deliberate for an unreasonable length of time or for unreasonable intervals. ABA standard jury instruction 5.4(b). In addition, as we noted in *People v Goldsmith,* a case concerning a *Sullivan* instruction given as part of the main charge to the jury, an instruction that calls for the jury, as part of its civic duty, to reach a unanimous verdict and which contains the message that the failure to reach a verdict constitutes a failure of purpose, is a substantial departure, but the reason it is, is because it tends to be coercive. *People v Goldsmith,* 411 Mich 561.

It remains to apply these principles to the case at hand.

## V

The first instruction at issue, the instruction given at 2:19 p.m. on August 28, 1980, substantially parallels ABA standard jury instruction 5.4. Defendant concedes that the court did give instructions that were substantially the same as ABA

standard jury instruction 5.4(a). However, defendant asserts that the first instruction went beyond the ABA charge. Specifically, defendant asserts that the following statements go far beyond and substantially depart from the ABA charge: (1) "And I am sure with consideration and thought, that you will be able to arrive at a verdict"; (2) "All of the facts have been presented to you"; (3) "By reasoning the matter out, it is often possible for all the jurors to agree." At that time, in addition, the trial court reread the instruction concerning the question of penalty and that possible penalties should not influence the jury's decision. As to the reading of the penalty instruction, the defendant asserts that it served to convey to the jurors that "they should just find the defendant guilty and the court would worry about the penalty."

We are not convinced that a substantial departure from ABA standard instruction 5.4 occurred here. The supplemental instruction concerning penalty was verbatim of that given to the jury prior to deliberations. We do not infer from that instruction that the jurors "should just find the defendant guilty and the court would worry about the penalty." The statement "all of the facts have been presented to you" is true, is innocuous, and does not coerce, encourage, or compel the jury to render a verdict.

Moreover, the other two statements, "And I am sure with consideration and thought, that you will be able to arrive at a verdict," and "By reasoning the matter out, it is often possible for all the jurors to agree," can hardly be said to constitute a substantial departure from ABA standard jury instruction 5.4. To be sure, those statements do not appear in the ABA instruction; however, as noted by Judge KELLY below, not every departure is a

"substantial departure." The supplemental instruction concerning penalty aside, any unwarranted inference by the jury from the three other statements discussed above was mitigated by the fact that all three of those statements *preceded* the trial judge's instruction that "[i]n the course of your deliberations, do not hesitate to examine your views and change your opinion if you are convinced that it is wrong. However, none of you should surrender your honest conviction as to the weight and the effect of the evidence or the lack of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict." As such, we do not find that any substantial departure occurred here.

The second instruction at issue was given approximately one and one-half hours later. In this instruction, the court said, "I feel you must give further consideration to this before I can accept a verdict," that "you have got all of the facts there are, and so you will just have to keep on deliberating and see if you can't reach a verdict," "please see if you can't reach a verdict," and "I am just going to ask you to please go back. . . . So I will ask you to please try."

The defendant does not lodge any specific complaint with regard to a particular aspect of this instruction. Rather, he asserts that the court continued a coercive tenor and failed to comply with the ABA charge. Defendant asserts that the subsequent instructions included only pleas for the jury to reach a verdict.

ABA instruction 5.4(b) provides that "[i]f it appears to the court that the jury has been unable to agree, the court may require the jury to continue the deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to

deliberate for an unreasonable length of time or for unreasonable intervals." It is clear that this second jury instruction was a departure from ABA instruction 5.4. None of the comments made by the court are contained in instruction 5.4. By the same token, the judge indicated that he felt the jury needed to give further consideration to the matter before he could accept a verdict. The court did not require, or threaten to require, the jury to deliberate for an unreasonable length of time, or for unreasonable intervals. ABA standard jury instruction 5.4(b).

The third instruction at issue is also a departure from ABA standard jury instruction 5.4. In the third instruction, after stating that the jury was learning that being a juror was a very difficult job, and just prior to recessing the case until 9:30 the next morning, the trial judge stated, "Perhaps after a night's sleep and breakfast in the morning, you will be able to come back and reach a verdict," and "Maybe with a refreshed mind in the morning, you will be able to reach a verdict." Neither of these remarks can be found in ABA instruction 5.4. As with the second instruction at issue, here the Court did not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals. Indeed, immediately after the third instruction, the jury was sent home for the night.

We do not find that the second and third instructions given constitute a "substantial departure" from ABA instruction 5.4. Although there was what could perhaps be characterized as a plea to try to reach a verdict, there was no statement to the effect that the jury must reach a verdict, or to the effect that the failure to reach a verdict constituted a violation of the jurors' "civic duty," *People v Goldsmith, supra,* or that they would be

required to deliberate until they reached a verdict, ABA standard jury instruction 5.4(b).

The jury began deliberation on August 27, 1980, at 2:26 p.m., and they retired for the day at 5:41 p.m. On August 28, 1980, the day on which all three of the jury instructions at issue herein were given, the jury apparently commenced deliberation at about 9:30 a.m., and they retired at 5:17 p.m. During that interim, the jury was faced with deciding three charges against defendant and four charges against the codefendant Henry Thomas. Thus, the jury had to decide seven charges, and weigh the testimony of nine witnesses and 22 exhibits. In addition, although both defendant Hardin and codefendant Thomas were charged with assault with intent to murder, both were found guilty of the lesser included offense of assault with intent to do great bodily harm less than murder. Given these facts, especially in view of the tone and content of the trial court's language, we are satisfied that the trial judge's comments, although concededly a departure from ABA standard jury instruction 5.4, were neither coercive, nor required or threatened to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

In conclusion, we find that the trial judge's instructions in this case do not constitute a "substantial departure" from ABA standard jury instruction 5.4. Although we do not condone the departure, where, as here, the ABA standard jury instruction 5.4 was given at one time as a supplemental instruction, the trial judge's additional comments do not constitute a substantial departure. His comments were directed toward generating discussion and fostering resolution of the case and avoided forcing a decision. We do not infer from those additional comments any implication

that any juror was to abandon his conscientious dissent and defer to the majority solely for the sake of reaching agreement. *People v Sullivan,* 392 Mich 334.

As we stated before, a departure is not "substantial" solely because there is a gross difference in language, style, or syntax, or even content. We must examine the alleged coerciveness of the language employed, and we must examine it in the factual context in which it was given. The overall effect of the instructions in this case was not to coerce the jury, but indeed seemed to stress the need to engage in full-fledged deliberation. *People v Bookout, supra,* 111 Mich App 404. The additional language, appended by the trial court to the proper ABA standard jury instruction (5.4), contains no undue pressure, threats, embarrassing assertions, or other wording that would tend to force a decision or cause a juror to abandon his conscientious dissent and defer to the majority. See *People v Holmes, supra,* 132 Mich App 749.

In *People v Goldsmith,* 411 Mich 555, 561; 309 NW2d 182 (1981), this Court found that a *Sullivan* instruction given as part of the main charge to the jury was reversible error since the instruction given was a substantial departure from the ABA standard instruction. Although the trial judge in that case gave the approved instruction, he added comments that this Court characterized as "essentially a call for the jury, as part of its civic duty, to reach a unanimous verdict and contains the message that a failure to reach a verdict constitutes a failure of purpose." In the instant case, there is no appeal to civic duty and no assertion that failure to reach a verdict constitutes a failure of purpose.

We conclude, therefore, that the trial judge's comments did not constitute a "substantial departure" from ABA standard jury instruction 5.4, and

thus we reverse the decision of the Court of Appeals.

We note, in passing, that the defendant herein did not object, on the record, to the additional instructions given by the trial court. Indeed, after the first instruction, which included ABA standard jury instruction 5.4, the court asked for objections, and received none from the prosecutor, from defendant Thomas' attorney, or from defendant Hardin's attorney. Admittedly, in *People v Goldsmith, supra,* we decided a case where no objection was posed to the contested portion of the jury charge. 411 Mich 558. That notwithstanding, GCR 1963, 516.2 is clear in its mandate: "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider the verdict, stating specifically the matter to which he objects and the grounds of his objection." MCR 2.516(C) is equally as plain: "A party may assign as error the giving of or the failure to give an instruction only if the party objects on the record before the jury retires to consider the verdict *(or, in the case of instructions given after deliberations have begun, before the jury resumes deliberations),* stating specifically the matter to which the party objects and the grounds for the objection." (Emphasis supplied.) We do not approve a procedure whereby counsel may "sit back and harbor error to' be used as an appellate parachute in the event of jury failure." *People v Brocato,* 17 Mich App 277, 305; 169 NW2d 483 (1969); *People v Allen,* 102 Mich App 655, 661; 302 NW2d 268 (1981), *lv den* 411 Mich 870 (1981). Our sister state of Indiana recently refused to review an issue concerning an *Allen-*type charge where counsel failed to lodge a specific objection. Since the defendant did not object at the time the instruction was given, he waived any

error in that regard. *Napier v Indiana,* 445 NE2d 1361 (Ind, 1983). In future cases, we will expect compliance with the court rule.

The judgment of the Court of Appeals is reversed, and the defendant's convictions are reinstated.

BRICKLEY, CAVANAGH, and BOYLE, JJ., concurred with RYAN, J.

WILLIAMS, C.J.

## I. INTRODUCTION

This case revisits *People v Sullivan,* 392 Mich 324; 220 NW2d 441 (1974), which adopted prospectively the American Bar Association Standards Relating to Trial by Jury § 5.4 for deadlocked juries.[1]

---

[1] ABA standard jury instruction 5.4 provides as follows:

"Length of deliberations; deadlocked jury.

"(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

"(i) that in order to return a verdict, each juror must agree thereto;

"(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

"(iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

"(iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

"(v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

"(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

"(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement." American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury (Approved Draft, 1968), § 5.4.

We specifically consider a test to determine what constitutes a "substantial departure" from the ABA recommended instruction standard. We adopt the following test:

1. Does the language of the instruction in question go beyond the language in the ABA instruction standard, § 5.4 to encourage the jury to reach a verdict? Or

2. Does the language of the instruction in question tend to negate the instruction standard, § 5.4 on proper deliberation, impartial consideration and adherence to honest conviction?

3. Coercion can prove a substantial departure, but lack of coercion proves nothing.

We hold that the trial court's charge to the jury in the instant case constitutes a substantial departure from the ABA recommended instruction standard, and therefore we affirm the Court of Appeals reversal of defendant's convictions.

## II. FACTS

The defendant was convicted by a jury in a joint trial of assault with intent to do great bodily harm less than murder, MCL 750.84; MSA 28.279, carrying a concealed weapon, MCL 750.227; MSA 28.424, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2).

After two days of proofs, the jury commenced deliberations at about 2:26 p.m. on August 27, 1980. That afternoon at about 5:39 p.m. the jury returned, not having reached a verdict. The jury was recessed until the next morning at 9:30 a.m. At about 10:25 a.m., pursuant to the jury's request, the judge reread certain instructions regarding intent. The jury again retired from the courtroom

at about 10:30 a.m. and deliberated until about
2:19 p.m. when they returned to the courtroom
after advising the judge that they had not reached
a verdict. The foreperson asked to speak with the
judge, which request was denied. The judge gave
the following instruction to the jury:

"I gather you are having a problem reaching a deci-
sion. And so let me read some additional instructions to
you because you have heard all the facts that there are
in this case. And I am sure with consideration and
thought, that you will be able to arrive at a verdict. But
we have some instructions I will give you in addition to
those I have given you before.

"All of the facts have been presented to you. You
have heard the arguments of excellent counsel on both
sides. And so there is nothing more to be presented
other than what there has been here up until now. It is
your duty to consult with your fellow jurors and to
deliberate with a view to reaching an agreement, if you
can do so without violating your own judgment. Before
deciding the case, give impartial consideration to the
view of your fellow jurors. This means you should give
respectful consideration to one another's views, talk
over differences of opinion in a spirit of fairness and
frankness.

"It is natural that differences of opinion will arise.
When they do, each of you should not only express your
own opinion, but also the facts and reasons upon which
you base it. By reasoning the matter out, it is often
possible for all the jurors to agree.

"In the course of your deliberations, do not hesitate
to reexamine your own views and change your opinion
if you are convinced that it is wrong. However, none of
you should surrender your honest conviction as to the
weight and the effect of the evidence or the lack of
evidence solely because of the opinion of your fellow
jurors or for the mere purpose of returning a verdict.

"I have also told you do not concern yourselves
during the trial or in your deliberations with what the
penalty might be if you should find the defendant
guilty. The question of guilt and the question of penalty

are decided separately. It is the duty of the judge to fix the penalty whenever a defendant is found guilty. Possible penalties should not influence your decision.

"Now, with that, I am going to ask that you return to the jury room. But before you do so, why don't you take a 15-minute break and go down and get some refreshments, if you want to, and return to the jury room in 15 minutes and see if you can't give further consideration to this. Thank you very much."

The jury resumed deliberations but returned to the courtroom about an hour and a half later, whereupon the judge further instructed:

"Members of the jury, I realize again you have not reached a verdict on all of the charges here involved. And I am sorry to feel I have to do this, but I feel you must give further consideration to this before I can accept a verdict. You have indicated you have not reached a verdict on both defendants on all of the charges. You have got all of the facts there are, and so you will just have to keep on deliberating and see if you can't reach a verdict. And so if you would like to go downstairs again, I will let you do that. No? Then please see if you can't reach a verdict. You have been out, in effect, probably six or seven hours. And I think you have read often about juries being out considerably longer than that when they have reported a verdict. So I am just going to ask you to please go back. I can read the same instructions, but it would just be the same. So I will ask you to please try. If there is any exhibit that you want, we can get that for you. I guess that is as much as I can tell you. Thank you."

The jury retired for the fourth time, at about 3:50 p.m., and returned at 5:16 p.m., again advising the judge that they had not reached a verdict. When asked by the court whether the jury would be able to arrive at a verdict if given a few more minutes, the foreperson responded negatively. In response to a further inquiry from the court, the

foreperson stated that agreement had been reached on only one count. The judge then stated to the jury:

"Then I am sorry. And I think you are learning being a juror is a very difficult job, as any type of judging is. But I am going to ask that you retire now. And we will recess the matter until 9:30 tomorrow morning and ask you all report here promptly at 9:30. Perhaps after a night's sleep and breakfast in the morning, you will be able to come back and reach a verdict.

"In the meantime, let me caution you try not to discuss it, and take it off your minds, and wait until you get back here in the morning. Maybe with a refreshed mind in the morning, you will be able to reach a verdict. You may retire. Be sure you sign out before you leave.

"Thank you. And have a pleasant evening."

There was no objection made by either party to any of the trial court's supplemental instructions. On the following day, August 29, 1980, after about two hours and 20 minutes of deliberations, the jury returned a guilty verdict.

The defendant appealed to the Court of Appeals. In a two-to-one decision, the Court of Appeals reversed defendant's convictions. 121 Mich App 355; 328 NW2d 416 (1982). This Court granted leave to appeal. 417 Mich 1040 (1983).

### III. COURT OF APPEALS DIVIDED ANALYSIS

In reversing the defendant's convictions, the Court of Appeals majority concluded that the supplemental instructions given to the deadlocked jury in the instant case constituted a substantial departure from the ABA charge approved in *People v Sullivan, supra.* 121 Mich App 360-361. The majority based its conclusion on prior decisions of that Court which had interpreted *Sullivan* as an-

nouncing a prophylactic rule requiring adherence to the uniform ABA standard thereby eliminating the need of future appellate inquiry into the coercive effect of any number of variations of an *Allen*-type charge in trials occurring after *Sullivan* and that "the only case-by-case inquiry necessary . . . involves whether the instruction given is a 'substantial departure' from the ABA charge." 121 Mich App 361, quoting *People v Allen,* 102 Mich App 655, 659; 302 NW2d 268 (1981), *lv den* 411 Mich 870 (1981). It was also noted that defendant's failure to object to the trial court's instructions did not preclude appellate review. We agree and further note that, contrary to plaintiff's contention, the defendant's failure to object is not to be considered in ascertaining whether the instructions substantially deviate from the ABA charge. See *People v Goldsmith,* 411 Mich 555; 309 NW2d 182 (1981). The majority reasoned that the trial judge's remarks that he was sure that the jury would be able to arrive at a verdict, that all of the facts had been presented to them, and that they should not concern themselves with what the penalty might be if they should find the defendant guilty constituted a substantial departure from the ABA charge since they were aimed at encouraging the jury to reach a verdict and were not sanctioned by the ABA standard. 121 Mich App 360-361.

Judge KELLY, in dissent, stated that the proper focus of an appellate court in determining whether an *Allen*-type charge to a deadlocked jury substantially departs from the ABA instruction standard is "whether the trial court's additional remarks tended to negate the instructions on proper deliberation, impartial consideration, and adherence to honest conviction which are at the heart of the ABA instructions." 121 Mich App 362. In reviewing the instant charge against this measure, Judge

KELLY concluded that the trial court's remarks were not a substantial departure from the ABA model, finding that they did not suggest that the jury depart from proper deliberation, impartial consideration, or adherence to honest conviction.

IV. POST-*SULLIVAN* RULE: "SUBSTANTIAL DEPARTURE" FROM ABA STANDARD, § 5.4

In *People v Sullivan, supra,* this Court renounced future use of *Allen*-type charges,[2] and adopted in place thereof the ABA jury instruction standard, § 5.4. The *Sullivan* Court recognized the inherent danger in the possibility that the *Allen* charge may be coercively worded. It was the elimination of this coercive effect along with the establishment of a justly balanced juror independence/verdict reaching test which the *Sullivan* Court sought to achieve by requiring the use of the ABA instruction standard:

"However, we are persuaded that *any possible future danger of coercive effect by the giving of an* Allen-*type charge is one which can and should be avoided.* An analysis of recent cases and commentaries confirms our belief that the better practice is to be found in the recommended ABA jury standard 5.4.
"Therefore, prospectively from the date of this opinion, the ABA standard jury instruction 5.4 as set forth herein is adopted by this Court. *Any substantial departure therefrom shall be grounds for reversible error."* (Emphasis added.) 392 Mich 342.

We find that our decision in *Sullivan* could be no clearer in its directive that deadlocked jury instructions in cases arising after *Sullivan* are no longer to be reviewed by a case-by-case inquiry into their coercive effect but solely by the standard

[2] Supplemental instructions given under these circumstances are popularly known as *Allen*-type instructions, having been derived from the charge sanctioned by the United States Supreme Court in *Allen v United States,* 164 US 492; 17 S Ct 154; 41 L Ed 528 (1896).

of substantial departure from the ABA approved charge. We hold, therefore, that to the extent some Court of Appeals cases[3] have indicated that lack of coercion is relevant in determining whether there is substantial departure, we specifically disapprove that language as inconsistent with our decision in *Sullivan.*

The only cases of this Court decided subsequent to *Sullivan* lend support to our above holding. In *People v Dupie,* 395 Mich 483; 236 NW2d 494 (1975), the Court, confronted with a pre-*Sullivan* supplemental instruction, noted the distinction between pre- and post-*Sullivan* cases. The Court observed that the propriety of pre-*Sullivan* instructions would be determined on a case-by-case basis by the presence or absence of coercion, while instructions in post-*Sullivan* cases would be tested pursuant to ABA jury instruction standard, § 5.4. *Id.,* pp 492-493.

In *People v Goldsmith, supra,* the propriety of post-*Sullivan* instructions given in the initial charge to the jury was before the Court. The Court reaffirmed the *Sullivan* rule that any substantial departure from the ABA charge constitutes reversible error and extended *Sullivan's* application to permit use of the ABA charge as part of the main charge to the jury prior to deliberations. In determining that the instruction was a substantial departure, the Court specifically noted that part of the instruction calling to the jury's civic duty to reach a unanimous verdict and which conveyed the message that failure to reach a verdict was a failure of purpose was not sanctioned by the ABA instruction standard. There was no mention of any consideration of the possible coercive effect of the instruction standard in the Court's analysis.

[3] See *People v Bookout,* 111 Mich App 399; 314 NW2d 637 (1981); *People v Holmes,* 132 Mich App 730; 349 NW2d 230 (1984).

We conclude from the above decisions that in post-*Sullivan* cases, such as the present case, the proper standard to be employed in ascertaining the validity of instructions delivered to a jury before deliberations or once the jury has become deadlocked is whether the instructions substantially depart from the ABA approved model. The presence or absence of coercion is no longer the determining factor. The test is solely one of substantial departure.

## V. DEFINITION OF "SUBSTANTIAL DEPARTURE"

The ultimate question in this case is what did the *Sullivan* Court mean by "substantial departure." We in effect are presented with three alternatives in the instant case. The first is that of the Court of Appeals majority supported by a line of Court of Appeals cases.[4] The second is that of the Court of Appeals minority, which the plaintiff supported at oral argument. The third is that of plaintiff's brief (pp 9-10), and a line of Court of Appeals cases.[5]

The Court of Appeals majority stated its test as follows:

"Thus, any language employed by the trial court aimed at *encouraging* the jury to reach a decision constitutes a substantial departure from the ABA charge *unless* the ABA standard instruction sanctions such a charge. Coercive effect is irrelevant." (Emphasis added.) 121 Mich App 361.

The Court of Appeals minority stated its test as follows:

[4] See *People v Allen,* 102 Mich App 655; 302 NW2d 268 (1981), *lv den* 411 Mich 870 (1981); *People v Johnson,* 112 Mich App 41; 314 NW2d 794 (1981); *People v Atkinson,* 120 Mich App 723; 328 NW2d 102 (1982).

[5] See fn 3.

"In reviewing whether language employed by a trial court was a substantial departure from the ABA instructions, the proper focus is on whether the trial court's additional remarks tended to negate the instructions on proper deliberation, impartial consideration, and adherence to honest conviction which are at the heart of the ABA instructions." 121 Mich App 362.

The plaintiff included in its test:

"Second, the Court of Appeals held that 'coercive effect is irrelevant' in analyzing whether an instruction constitutes a substantial departure. With this the People strongly disagree. Granted, coercion cannot be the basis of analysis. But surely the fact that additional instructions are not coercive must be a factor to consider in whether or not substantial departure has occurred."

Analysis reveals that no one of the three alternatives is completely right, and no alternative is completely wrong. In order to understand why this is so, and what the true test should be, it is useful to reexamine the ABA jury instruction standard, § 5.4 itself, and the reason for it. The main reason for ABA instruction standard, § 5.4 was to adopt a just balance between protecting jurors' independence and the necessity of reaching a verdict. Examination of the language of ABA instruction standard, § 5.4 shows that the effort to establish such a balance even enters into much of the sentence structure, for example, "(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment." It was obviously hoped that the establishment of such an instruction standard would obviate the past necessity of carefully and laboriously weighing the language of the charge or charges to determine whether there was coercion.

As with any balance, it does not require much to be added to or subtracted from either side of the balance to produce a tilt. The *Sullivan* Court did not want to prescribe a strait jacket, but it did proscribe a substantial departure. In our opinion, anything that tips the balance either way is a substantial departure.

Turning to the three alternative formulae, it is immediately evident that the majority and minority opinions of the Court of Appeals address the opposite balances of the scales. The majority indicates you cannot add weight to the verdict reaching side: "encouraging the jury to reach a decision . . . unless the ABA standard instruction sanctions such a charge." The minority indicates you cannot take weight from the juror independence side: "additional remarks tended to negate the instructions on proper deliberation, impartial consideration, and adherence to honest conviction." Looking at those two formulae then, each is correct as far as it goes. What is lacking in each is that the rule must apply to both sides of the balance to be complete. In the instant case the majority's part of the rule touched the trial judge's action so it was applicable. On the other hand, the minority's part of the rule did not touch the trial judge's action so it was not applicable. In another case, the trial judge's action may affect either side of the balance. So obviously the rule must consider both sides of the balance to be a complete rule.

As for analysis of the plaintiff's rule, it, like the majority's rule, affects the "verdict reaching" side of the balance. It states one truth, but overlooks another. In the first place, while the Court of Appeals did say "[c]oercive effect is irrelevant," we interpret it to say so in the context of a paragraph, the first sentence of which was: "Thus, any language employed by the trial court aimed at en-

couraging the jury to reach a decision constitutes a substantial departure from the ABA charge unless the ABA standard instruction sanctions such a charge." In other words, once it is clear that there is unsanctioned *encouragement* to reach a decision, then and only then "coercive effect is irrelevant." The reason, of course, is that encouragement is more onerous than coercion, and if the rule of encouragement is violated, then there is no use considering the less onerous rule, because the scales are already out of balance and there is a "substantial departure."

Second, the plaintiff is right in saying, "[g]ranted, coercion cannot be the basis of analysis," but not right in saying, "[b]ut surely the fact that additional instructions are not coercive must be a factor to consider in whether or not substantial departure occurred." Plaintiff was right in the first instance, because the test of *Sullivan* is not coercion but substantial departure from ABA instruction standard, § 5.4. Plaintiff was wrong in the second instance because lack of coercion is never a real factor in considering substantial departure, because we agree with the Court of Appeals majority that unsanctioned encouragement to reaching a verdict creates a substantial departure without considering the less onerous coercion test. We do agree with plaintiff that in the abstract the statement that "coercive effect is irrelevant" is not wholly correct. Because, as plaintiff says, "[e]ven a small variation in the approved instruction would constitute a substantial departure if, in fact, that variation were coercive."

After considering all three alternatives and recognizing that there is value in each, we adopt the following test to explicate the term "substantial departure" in connection with ABA jury instruction standard, § 5.4. We say "explicate" rather

than "define," because further experience may reveal that there are additional facets to "substantial departure." This then is the rule for "substantial departure":

1. Does the language of the instruction in question go beyond the language in the ABA instruction standard, § 5.4 to encourage the jury to reach a verdict? Or

2. Does the language of the instruction in question tend to negate the ABA standards on proper deliberation, impartial consideration, and adherence to honest conviction?

3. Coercion can prove a substantial departure, but lack of coercion proves nothing.

### VI. APPLICATION OF RULE TO INSTANT CASE

In examining the trial court's supplemental instructions in the present case, we find that the combined effect of the series of instructions delivered to the deadlocked jury amounted to a substantial departure from the ABA approved charge. The trial court's first remarks to the jury after being advised of the jury's deadlock conformed in the main to the ABA instruction standard. The court deviated, however, by instructing the jury that all of the facts in the case had been presented to them. While this remark standing alone is fairly innocuous, when viewed in connection with the trial court's subsequent charges, including repetition of this remark, the net effect is to encourage the jury to reach a verdict.

The second deviation occurred when the trial court advised the jury not to concern itself with what the possible penalty might be and that it is the judge's duty to fix the penalty if a defendant is found guilty. This instruction is a reiteration of an

instruction previously given in the main charge. However, its recitation in this context interjected extraneous considerations not within the scope of the ABA instruction standard, § 5.4. The court's highlighting at this time of its function of imposing penalties could have tended to encourage the jury to find the defendant guilty.

Furthermore, the trial judge on several occasions commented to the jury that he was sure they would be able to arrive at a verdict. At the beginning of the initial supplemental instruction given after one full day of jury deliberations, the court stated, "[a]nd I am sure with consideration and thought, that you will be able to arrive at a verdict." Then, following the jury's second unsuccessful try at deliberations, before sending them off again, the judge instructed them to "please see if you can't reach a verdict . . . please try." The next time was just before the jury retired for the night, the judge told them that "[p]erhaps after a night's sleep and breakfast in the morning, you will be able to come back and reach a verdict," and emphasized again that "[m]aybe with a refreshed mind in the morning, you will be able to reach a verdict." These repeated statements went far beyond the ABA standards in that they were a constant encouragement to the jury that they could and should render a verdict. In particular, the trial court's expression of its belief that it was sure the jury would return a verdict could have improperly influenced jurors to arrive at a verdict despite their honest convictions for the mere purpose of returning a verdict.

We conclude that the deviations in the instant case, when considered together, were aimed at encouraging the jury to reach a verdict absent sanction for such charges by the ABA instruction

standard and therefore constitute a substantial departure. It is not our intention to strait-jacket trial judges by requiring rote compliance with the ABA instruction standard failing which will result in reversal. We understand that trial judges need a certain amount of flexibility to tailor instructions to the particular circumstances of the individual case. However, whenever a trial judge substantially departs from the ABA approved charge it upsets the balance sought to be struck between avoiding the costly expense of mistrials and permitting juror independence. We therefore urge trial judges to adhere closely to the language in the ABA instruction standard to maintain the delicate balance contemplated by *Sullivan* and thereby reduce the possibility of prejudice to both the defendant and the people, as well as minimize the problem of widespread variation on the ABA charge.

For the foregoing reasons, we would affirm the Court of Appeals reversal of defendant's convictions.

KAVANAGH and LEVIN, JJ., concurred with WILLIAMS, C.J.