# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

HAROLD LAMONT WALKER,

Defendant-Appellant.

UNPUBLISHED
December 1, 2016

No. 327063
Wayne Circuit Court
LC No. 14-007222-01-FH

Before: FORT HOOD, P.J., and GLEICHER and O'BRIEN, JJ.

PER CURIAM.

Defendant, Harold Lamont Walker, was convicted by a jury of felon in possession of a firearm (felon-in-possession), MCL 750.224f, carrying a concealed weapon (CCW), MCL 750.227, and third-offense possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and sentenced as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 46 months to 75 years for the felon-in-possession and CCW convictions, each of which was to be served consecutive to a prison term of ten years for the third-offense felony-firearm conviction. He appeals as of right his March 12, 2015 judgment of sentence. We affirm defendant's convictions and sentences but remand this matter to the trial court for the ministerial task of correcting an error in the March 12 judgment of sentence.

## I. FACTUAL & PROCEDURAL BACKGROUND

Defendant's convictions arise out of his possession of a firearm in Detroit on August 14, 2014. While on routine patrol, law enforcement observed three men and one woman standing near a vehicle, drinking beer, and listening to loud music. As the officers approached the four individuals, defendant quickly left the group, ran to the front of the home, and clutched his right side with a hand over his pocket as though he were attempting to conceal a firearm. Three police officers testified that, after unsuccessfully attempting to enter the home, defendant removed a firearm from his person and discarded it in a bush. One of the officers specifically testified that the firearm was a revolver. The police recovered a loaded revolver from that bush shortly thereafter. Defendant was charged with, and eventually convicted of, the crimes set forth above. Defendant denied ever possessing a firearm; instead, his defense at trial was that he discarded a beer bottle, not a firearm, in the bush.

-1-

## II. ARGUMENTS ON APPEAL

Defendant raises a variety of arguments on appeal. First, he argues that reversal is required because the prosecutor impermissibly argued facts not in evidence. Second, he argues that reversal is required because the trial court's "deadlock" instruction coerced a guilty verdict. Third, he argues that resentencing is required because the trial court erred in scoring offense variable (OV) 19 at ten points. Fourth, defendant argues that reversal is required because the prosecution presented insufficient evidence to support the jury's verdict. Fifth, defendant argues that a remand is necessary to correct his judgment of sentence because it incorrectly indicates that his sentence for the felony-firearm conviction runs consecutive to both his felon-in-possession and CCW convictions. We will address each individually below.

Defendant also raises several other arguments in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4. First, defendant argues that reversal is required because the trial court demonstrated a bias against him throughout the trial in this matter. Second, defendant argues that reversal is required because his trial counsel failed to call material witnesses, failed to object to various impermissible statements made by the prosecutor during trial, and failed to adequately investigate his case. We will address these arguments individually below as well.

## A. PROSECUTORIAL MISCONDUCT

Defendant argues that he was deprived of his constitutional right to due process and a fair trial by the prosecutor's comments on a defense witness's credibility during rebuttal argument. Specifically, defendant takes issue with the prosecutor's statement that Darryl Williams would not "get any type of additional time for having this gun." This argument was made in response to defendant's theory that Williams was the individual who threw the firearm in the bush. Indeed, Williams was called as a defense witness at trial and testified that he, not defendant, was the person who threw the firearm in the bush. According to defendant, the prosecutor's argument in this regard constituted an impermissible claim by the prosecutor that she had special knowledge of the witness's truthfulness.

"[A] prosecutor is free to argue the evidence and any reasonable inferences that may arise from the evidence." *People v Callon*, 256 Mich App 312, 330; 662 NW2d 501 (2003). However, a prosecutor is not permitted to make statements of fact to the jury that are not supported by the evidence. *People v Stanaway*, 446 Mich 643, 686; 521 NW2d 557 (1994). Nevertheless, even if a prosecutor argues facts not supported by the evidence, it is well established that jurors are presumed to follow their instructions, and instructions are presumed to cure most errors. *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

Here, the prosecutor's comment at issue, i.e., that the witness would not "get any type of additional time for having this gun," was not supported by any evidence presented at trial. Thus, we agree with defendant to the extent that he claims the remark was improper. We disagree, however, that this comment, alone, requires reversal under the facts and circumstances of this case. Defense counsel immediately objected to this improper remark, the prosecutor did not pursue that argument any further, and the trial court instructed the jury that the lawyers' statements were not evidence immediately after the prosecutor completed his rebuttal argument.

As indicated above, it is well established that jurors are presumed to follow their instructions, and instructions are presumed to cure most errors. *Abraham*, 256 Mich App at 279. To the extent defendant claims that the trial court's instructions were insufficient in this regard, there is nothing in the record that supports that assertion. Indeed, as indicated above, the improper remark was made during the prosecutor's rebuttal argument, and the trial court gave its jury instructions just minutes later. Accordingly, we conclude that defendant was not deprived of his constitutional right to due process and a fair trial.

## B. JURY INSTRUCTIONS

Defendant also argues that the trial court erred in giving a "deadlock" jury instruction that was materially different than the instruction set forth in M Crim JI 3.12. Specifically, defendant takes issue with the trial court's decision to tell the jury, in response to a note indicating that there would not be "an agreement with more time," that "that's not the way this works," that they would "come back in one hour and resume . . . deliberations," and, twice, that "if there's someone among you who's failing to follow the instructions or there's someone who's refusing to participate in the process, you can send us a notice and let us know and we can address that." Defendant claims that this instruction was impermissibly coercive rather than encouraging and respectful of the jurors' beliefs.

When a jury indicates that it is unable to reach a verdict, the trial court may give supplemental jury instructions and direct the jury to continue deliberations. *People v Hardin*, 421 Mich 296, 316; 365 NW2d 101 (1984). A proper supplemental instruction facilitates continued deliberation while avoiding coercion. *People v Sullivan*, 392 Mich 324, 334; 220 NW2d 441 (1974). However, if the supplemental instruction would force a juror to surrender an honest conviction, the instruction is impermissibly coercive. *Id*. To determine whether a given instruction is impermissibly coercive, we look to whether the instruction has "an undue tendency of coercion—*e.g.*, could the instruction given cause a juror to abandon his conscientious dissent and defer to the majority solely for the sake of reaching agreement?" *Hardin*, 421 Mich at 314. The instruction "must be examined in the factual context in which it is given" to determine whether there was a coercive effect on the jury. *Id*. at 315. Additional language will "rarely" be considered a substantial departure if it "contains 'no pressure, threats, embarrassing assertions, or other wording that would cause this Court to feel that it constituted coercion.' " *Id*. (citation omitted).

In this case, the context around the trial court's "instruction" at issue cannot be overlooked. Deliberations began at 11:19 a.m. At 12:36 p.m., the jury sent a note, which stated as follows: "We are hung, and I don't believe there will be an agreement with more time." The trial court respondent as follows:

> Well, that's not the way this works. Your [sic] all heard a full day of testimony, and you deliberated for what an hour and fifteen minutes, and now you just give up. That's not the way it works, I'm sending you all to lunch, maybe what you need is some nourishment, other than candy, to help you all, you know, have clear heads and review the evidence that you heard.

-3-

Now, if there's someone among you who's failing to follow the instructions or there's someone who's refusing to participate in the process, you can send us a note and let us know that and we can address that, but at this point I'm not inclined to end your deliberations at this point because you had a full day of testimony and you've only been at this, discussing it, for one hour.

So, I'm going to send you to lunch, maybe sometime apart will help you all to think about things, and then you'll come back in one hour and resume your deliberations. If you have any questions, if there is anything that you don't understand or need clarification on send a note. And again, if there's one among you or two among you, three among you, who are refusing to follow instructions or participate in the process you can let us know that, too.

Remember you are not to discuss this case, when you are anywhere other than in the jury room cause you're still a juror. So even if you go to lunch together some of you, you can not [sic] discuss this case cause you can only discuss it when you're all together and when you're in the jury room.

The jury was excused at 12:41 p.m., resumed deliberations at 1:40 p.m., and reached a verdict at 3:07 p.m.

We discern nothing impermissibly coercive about these comments by the trial court. The trial court did not require that the jury deliberate for an unreasonable length of time or in unreasonable intervals. Rather, the trial court informed the jury that it had not deliberated long enough in light of the amount of evidence that was presented in this three-day trial, which included one full day of testimony. Although it is true that the trial court departed from the standard "deadlock" jury instruction, the trial court's comments, when reviewed in context, were not coercive as defendant claims. While, in our view, giving the standard instruction would have been more favorable, we simply cannot conclude that these comments coerced the jury as opposed to stressed to the jury the importance of engaging in full-fledged deliberation. *Hardin*, 421 Mich at 321. Accordingly, we conclude that reversal is not required based on these comments.

While we appreciate the concerns raised by our dissenting colleague, we do not agree that reversal is required here. Our dissenting colleague opines that, by indicating that it would "address" jurors "who are refusing to follow instructions or participate in the process," the trial court essentially "threatened that it would separately 'address' dissenting jurors if informed of their identities[.]" We cannot agree. In our view, the trial court's statement that it would "address" jurors "who are refusing to follow instructions or participate in the process" reflects its intent to address jurors who were refusing to meaningfully participate in deliberations, not its intent to shame those with conflicting views. In short, while the standard instruction would have been more favorable, we are not willing to conclude that the trial court's failure to utilize it under the facts and circumstances of this case coerced a verdict.

-4-

## C. OV 19 SCORING

Defendant argues on appeal that resentencing is required because the trial court's ten-point score for OV 19 was not supported by a preponderance of the evidence. Specifically, defendant claims that his refusal to provide his name upon arrest, alone, cannot support a ten-point score for OV 19.

OV 19 addresses the interference with the administration of justice. The trial court must score 10 points if "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice." MCL 777.49(c). In scoring OV 19, a court may consider the defendant's conduct after the completion of the sentencing offense. *People v Smith*, 488 Mich 193, 200; 793 NW2d 666 (2010). A defendant interferes with the administration of justice by "oppos[ing] so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013).

In this case, the record does not support defendant's claim that the scoring OV 19 was based entirely on his refusal to provide a name. Rather, the scoring of OV 19 was based on the evidence that Williams, the only witness corroborating defendant's defense, likely lied on behalf of defendant. As the trial court explained, "they trumped up that phony, bogus testimony" and it was not "a coincidence that low-and-behold after that young man spent some time in the Wayne County Jail, all of a sudden he decided he wanted to come to court and tell a ridiculous version of events." The record supports this conclusion. Williams only admitted to placing the firearm in the bush after his incarceration with defendant, and this testimony directly contradicted that of the officers. Williams admitted that he looked to defendant as a "role model," that he has a longstanding relationship with defendant, and that he and defendant were housed together in jail. This Court has previously recognized that defendant's conduct of "instructing a victim or witness to not reveal or disclose a defendant's conduct" is sufficient to support a ten-point score for OV 19. See *Hershey*, 303 Mich App at 343. Accordingly we also conclude that the defendant's conduct in this case, which was based on circumstantial evidence provided by Williams, was sufficient to support scoring OV 19 at ten points, and defendant does not challenge the trial court's reliance on judicially found facts in scoring this, or other, OVs. See, e.g., *People v Biddles*, ___ Mich App ___, ___; ___ NW2d ___ (2016); slip op 4-11.

## D. SUFFICIENCY OF THE EVIDENCE

Defendant additionally argues that the evidence presented by the prosecution was insufficient to support his felony-firearm conviction. Specifically, defendant claims that the Legislature did not intend that a felony-firearm conviction be based on a felon-in-possession conviction. As defendant acknowledges, however, both this Court, see *People v Dillard*, 246 Mich App 163; 631 NW2d 755 (2001), and our Supreme Court, *People v Calloway*, 469 Mich 448; 671 NW2d 733 (2003), have rejected this position, and we are bound by those decisions. *People v Strickland*, 293 Mich App 393, 402; 810 NW2d 660 (2011); see also MCR 7.215(J)(1). While defendant claims that we are no longer required to follow these decisions in light of our Supreme Court's decision in *People v Bobby Smith*, 478 Mich 292; 733 NW2d 351 (2007), we have consistently held otherwise. See, e.g., *People v James*, unpublished opinion per curiam of the Court of Appeals, issued June 14, 2016 (Docket No. 326393), p 4.

E.  CONSECUTIVE NATURE OF SENTENCES

On appeal, defendant additionally argues that the sentence for his felony-firearm conviction should run consecutive to his felon-in-possession conviction only, not his CCW conviction, and the prosecution concedes the same on appeal.  We agree.  Accordingly, we remand this matter for the ministerial task of correcting the judgment of sentence in this regard. See, e.g., *People v Taybron*, 486 Mich 899; 780 NW2d 795 (2010).

F.  JUDICIAL BIAS

In his Standard 4 brief, defendant argues that he was deprived of his constitutional right to a fair trial because the trial court demonstrated a bias against him throughout the trial and in front of the jury.  Specifically, defendant claims that he was deprived of his constitutional right to a fair trial when the trial court directly questioned Williams, when the trial court commented that defense counsel mischaracterized a witness's testimony, when the trial court allegedly interfered with defense counsel's cross-examination of two other witnesses, and when the trial court overruled defense counsel's objections.

"The question whether judicial misconduct denied defendant a fair trial is a question of constitutional law that this Court reviews de novo." *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015).  However, because defendant did not object to the challenged questions, comments, or behavior in the trial court, these issues are unpreserved and reviewed for plain error affecting substantial rights.  *People v Sardy*, 216 Mich App 111, 117-118; 549 NW2d 23 (1996).  In determining whether a trial judge's conduct deprives defendant of a fair trial, this Court considers whether the "trial judge's conduct pierces the veil of judicial impartiality." *Stevens*, 498 Mich at 170.  "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id*. at 171.  This is a fact-specific inquiry, and this Court considers "cumulative effect" of any errors.  *Id*. at 171-172.  A single instance of misconduct generally does not create an appearance that the trial judge is biased unless the instance is "so egregious that it pierces the veil of impartiality." *Id*. at 171.  In evaluating the totality of the circumstances, this Court should consider a "variety of factors," including, but not limited to following: the nature of the conduct, the tone and demeanor of the trial court throughout the proceedings, the scope of the judicial conduct in the context of the length and complexity of the trial, the extent to which the court's conduct was directed at one side more than the other, and the presence of any curative instructions.  *Id*. at 172.  A defendant must overcome a heavy presumption of judicial impartiality when claiming judicial bias. *People v Jackson*, 292 Mich App 583, 598; 808 NW2d 541 (2011).

With respect to the trial court's questioning of Williams, the record does not reflect judicial impartiality as defendant suggests.  After the parties' questioned Williams, the trial court briefly questioned Williams regarding his testimony that he, not defendant, threw the firearm in the bush:

> *The Court*:  So that day you didn't tell anybody that was your gun, right?

-6-

*Witness*:  No, ma'am.

*The Court*:  Because you were scared?

*Witness*:  Yes, ma'am.

*The Court*:  You kept it to yourself?

*Witness*:  Yes, ma'am.

*The Court*:  So . . . I'm sure you must have been shocked when you found out you were getting subpoenaed to come to court right?

*Witness*:  Yes, ma'am.  I didn't know what it was for.

*The Court*:  Because you never told anybody that that was your gun?

*Witness*:  Yes, ma'am.  But neither Neff or Chandra held . . . guns.

*The Court*:  Hold on, I didn't ask you, remember what I said, you can't just say what you wanna say, all right.  You have to answer the questions that are asked, and I didn't ask you about Chandra or Neff or anybody, okay.

*Witness*:  Yes, ma'am.

*The Court*:  I just asked if you ever told anybody that that was your gun that was in those bushes, and your answer to that was no, you never told anybody, right?

*Witness*:  Yes, ma'am.

*The Court*:  Okay.

This questioning does not reflect, as defendant suggests, that "the defense was fighting two prosecutors."  Rather, it reflects appropriate questioning by the trial court to "produce fuller and more exact testimony or elicit relevant information."  *Stevens*, 498 Mich at 173; see also MRE 614(b).  The questions asked by the trial court were material to questions of fact at issue, i.e., whether defendant possessed a firearm, limited in scope, and posed in a neutral manner.  The fact that this questioning may have been detrimental to defendant's case, alone, does not render the questioning itself improper.  *People v Davis*, 216 Mich App 47, 52; 549 NW2d 1 (1996).  Furthermore, the trial court properly instructed the jury that its questions were not evidence and that it should not consider the trial court's opinion of guilt or innocence.  "[T]he presence of a curative instruction does tend to cut against a finding of judicial bias."  *Stevens*, 498 Mich at 190 (citation and internal quotation marks omitted).  Accordingly, we discern no error requiring relief with respect to the trial court's questioning of Williams.

With respect to the trial court's comment that defense counsel was mischaracterizing testimony, the record does not reflect judicial impartiality as defendant suggests.  Sergeant

Matthew Gnatek testified that he observed defendant "run away from a parked car . . . ." Defendant claims that the following exchange, which occurred based on defense counsel's cross-examination, between defendant and the trial court reflected a bias against him:

> *Defense Counsel*:  And you observed my client, sprint away from the group up to the porch?

> *The Court*:  That's a mischaracterization, he never said sprint, never.

> *Defense Counsel*:  He said fast sprint, Judge.

> *The Court*:  No, he didn't.  He said run, he didn't say sprint.

> *Defense Counsel*:  Okay, your Honor, that was . . . I heard sprint.

> *The Court*:  Well . . . we're not gonna argue.  I have ruled.

> *Defense Counsel*:  I understand, I'll move on.

Applying the rules cited above to this case, it is apparent that the trial court's comments were not improper.  While admittedly critical, the trial court's comments did not pierce the veil of judicial impartiality.  *Jackson*, 292 Mich App at 598.  Instead, the trial court attempted to correct what it believed was a mischaracterization of the witness's testimony.  Indeed, the trial court was correct in its belief that Sergeant Gnatek testified that defendant ran away from the parked vehicle.  While it is also true that Gnatek later agreed that defendant's pace was that of a sprint as well, we do not view this statement, alone, as reflecting a "deep-seated favoritism or antagonism" so as to deprive defendant of a fair trial.  *Id*. (citation and internal quotation marks omitted).  Furthermore, as indicated above, the trial court's subsequent instructions presumptively cured any error, *Stevens*, 498 Mich at 190, and defendant makes little to no effort to overcome this presumption.  Accordingly, we discern no error requiring relief with respect to the trial court's comments to defense counsel.

With respect to the trial court's alleged interference with defense counsel's cross-examination of two other witnesses, the record does not reflect judicial impartiality as defendant suggests.  Defendant cites the following exchanges to support his claim:

> *Defense Counsel*:  Okay, and then he goes to retrieve the weapon?

> *Witness*:  He went to retrieve it, correct.

> *Defense Counsel*:  And you observed him retrieve it?

> *Witness*:  Yes.

> *Defense Counsel*:  How long did it take him to search for the weapon in the bush?

> *Witness*:  Seconds, he just went in and came right out.

*The Court*:  Anything else?

*Defense Counsel*:  Just one moment, your Honor.

*Defense Counsel*:  Was there anything else on the porch?

*Witness*:  Not that I recall, just the railings.

*Defense Counsel*:  Do you recall there being chairs, or other beer bottles?

*Witness*:  I don't recall, no.

*Defense Counsel*:  And you said that your supervisor, Officer Gnatek?

*Witness*:  Sergeant Gnatek.

*Defense Counsel*:  Excuse me, Sergeant Gnatek, he alerted you that client had thrown a weapon?

*Witness*:  He yelled it out.

*Defense Counsel*:  Okay, but . . . you didn't see it first, what came first Officer Gnatek alerting you that a weapon had been thrown or you observing that?

*Witness*:  I observed it first.

*Defense Counsel*:  Okay.

*Witness*:  So when he yelled it out, I was like, okay.

*Defense Counsel*:  Just one moment, your Honor.

*Defense Counsel*:  Officer Marek, you said you don't know if the front door, if you recall it was open?

*Witness*:  It was closed, I don't know if it was locked or not, but it was closed, it was a screen door and a regular door.

*Defense Counsel*:  Okay.

*Defense counsel*:  Nothing further, your Honor.

\* \* \*

*Defense Counsel*:  And the reason I ask that, Sergeant Jackson, is within those ten lines that I just read to you, I counted three probably's and four maybe's.

*The Court*:  Is that an argument or a question, I mean what's the point?

*Defense Counsel*:  The questions are coming, your Honor.

*The Court*:  Move on.

*Defense Counsel*:  Just a couple . . . .

*The Court*:  I don't think it's inconsistent, so you can move on.

*Defense Counsel*:  Okay, thank you, your honor.

After additional brief testimony, the witness was excused.

Here, it is apparent that the alleged interference was not improper.  It is well-established that the trial court has the inherit authority to control the proceedings before it. *People v Conley*, 270 Mich App 301, 307; 715 NW2d 377 (2006).  The record reflects several separate and brief comments by the trial court in an attempt to prevent the wasting of time and resources.  Defense counsel was permitted to question the witness exhaustively, and the trial court's brief interjections were nothing more than ordinary.  The trial court asked defense counsel whether he had concluded his examination and prohibited defense counsel from impermissibly arguing with the witness.  These comments were well within the trial court's discretion.  See MRE 611(a); see also *People v Sexton*, 250 Mich App 211, 221; 646 NW2d 875 (2002).  Furthermore, as indicated above, the trial court's subsequent instructions presumptively cured any error, *Stevens*, 498 Mich at 190, and defendant makes little to no effort to overcome this presumption.  Accordingly, we discern no error requiring relief with respect to the trial court's alleged interference.

With respect to the trial court's decision to overrule defense counsel's objection, the record does not reflect judicial impartiality as defendant suggests.  Defendant claims that the only reason the trial court overruled defense counsel's objection to the prosecutor's cross-examination of Williams was "to help [the] prosecution make [the] defense sole witness look unreliable, an[d] like a harden criminal in the eyes of the jury."  Defendant provides no factual or legal background for this position; thus, it is abandoned. *Jackson*, 292 Mich App at 598.  Indeed, defendant has not argued, much less persuasively argued, that the trial court's legal basis for overruling the objection was improper.  Furthermore, as indicated above, the trial court's subsequent instructions presumptively cured any error, *Stevens*, 498 Mich at 190, and defendant makes little to no effort to overcome this presumption.  Accordingly, we discern no error requiring relief with respect to the trial court's alleged interference.

## G.  INEFFECTIVE ASSISTANCE

In his Standard 4 brief, defendant also argues that he was deprived of his constitutional right to the effective assistance of counsel.  Because defendant did not raise this argument below, our review of this issue is limited to mistakes apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).  "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013) (citation omitted).

"To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*. "A defendant must meet a heavy burden to overcome the presumption that counsel employed effective trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

On appeal, defendant argues that counsel's performance constituted ineffective assistance because he failed to call material witnesses, eyewitnesses, and experts. Decisions about what arguments to make, what evidence to present, and whether to call witnesses are matters of trial strategy, *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999), and "this Court will not second-guess defense counsel's judgment on matters of trial strategy," *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011).

With respect to defendant's argument that defense counsel failed to call material witnesses, defendant claims that defense counsel should have called his girlfriend as a character witness, two eyewitnesses, and a fingerprint expert. First, with respect to defendant's girlfriend, defense counsel's decision not to call her was the product of reasonable trial strategy in light of the fact that presenting character testimony would have opened the door to defendant's prior convictions, which included other instances of felony-firearm. *Rockey*, 237 Mich App at 76. Defendant, in hindsight, merely suggests his girlfriend's testimony could have proved favorable, but that speculation is insufficient to warrant reversal. Accordingly, we conclude that defense counsel's performance did not fall below prevailing norms.

With respect to the two eyewitnesses, defendant claims they could have provided testimony regarding his distaste for firearms and the fact that he threw a beer, not a firearm, in the bush. There is nothing in the record that supports this claim, and it is defendant's, not our, burden to support his appellate claims. *Payne*, 285 Mich App at 190. Furthermore, the jury was presented with, and rejected, defendant's beer-bottle theory, and there is nothing in the record to suggest additional testimony of this nature would have made any difference. We would be remiss not to also mention that defendant's prior convictions, including convictions involving firearms, undermine his claim that he dislikes weapons. Accordingly, we conclude that defense counsel's performance did not fall below prevailing norms.

Finally, with respect to the fingerprint expert, defendant claims that, had a fingerprint expert determined that his fingerprints were not on the firearm that was found in the bush, the jury would have not convicted him. Again, however, defendant has failed to provide any factual support for his claim. *Payne*, 285 Mich App at 190. Indeed, it is equally likely that his fingerprints were all over the firearm based on the record before us. Defense counsel's decision to argue that the prosecution failed to test the gun for fingerprints, as opposed to testing it for fingerprints, was less risky. In fact, defense counsel was thus permitted to argue that the prosecution's failure to test for fingerprints would have "clear[ed] up any doubt," "but they didn't do that." The fact that it proved unsuccessful, alone, does not render counsel's assistance ineffective. *Heft*, 299 Mich App at 84. Accordingly, we conclude that defense counsel's performance did not fall below prevailing norms.

Defendant also argues that counsel's performance constituted ineffective assistance because he failed to object to improper comments made by the prosecutor regarding what Williams had to lose. Prosecutors have great latitude when arguing at trial. *People v Fyda*, 288

Mich App 446, 461; 793 NW2d 712 (2010). Prosecutors may argue the evidence and all reasonable inferences that arise from the evidence as it relates to their theory of the case, and they need not state their inferences in the blandest possible language. *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007). Further, an otherwise improper remark might not warrant reversal if the prosecutor is responding to the defense counsel's argument. *Id*. at 64.

In this case, it is apparent that the prosecutor's argument was not improper. During trial, Williams stated, for the first time, that he, not defendant, threw the firearm into the bush earlier in the day. The prosecutor argued that, because Williams would be incarcerated for at least five years, he had nothing to lose by testifying that he possessed the firearm. This argument was made in response to the defense's theory that Williams, not defendant, possessed the firearm and was made in hopes of convincing the jury that Williams's testimony was untrue. Given its responsive nature and the fact that it was supported by the evidence, we discern no impropriety with respect to the prosecutor's argument, and defense counsel cannot be faulted for failing to make a meritless objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Lastly, defendant raises a cursory claim regarding defense counsel's alleged failure to investigate, but this argument is abandoned. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). "The failure to brief the merits of an allegation of error constitutes an abandonment of the issue." *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004). Furthermore, this claim is not supported by the record.

## H. TRIAL COURT'S BEHAVIOR

Despite our conclusions above, i.e., that defendant is not entitled to reversal or resentencing, we do feel it briefly necessary to express our concern with comments made by the trial court at times during this case. As identified by our dissenting colleague, the trial court made several comments that, in our view, were certainly inappropriate. We are most troubled by the trial court's behavior at sentencing, which included name calling, taunting, and other inappropriate innuendos. Nevertheless, we ultimately believe that defendant's convictions and sentences should stand.

## III. CONCLUSION

Accordingly, we affirm defendant's convictions and sentences but remand for the ministerial task of correcting the judgment of sentence to reflect that defendant's felony-firearm conviction is to be served consecutive to his felon-in-possession conviction, not his CCW conviction. We do not retain jurisdiction.

/s/ Karen M. Fort Hood
/s/ Colleen A. O'Brien

-12-