# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

KERA ELONE HILL,

      Defendant-Appellant.

UNPUBLISHED
January 23, 2018

No. 333453
Wayne Circuit Court
LC No. 15-009809-01-FC

---

Before: CAMERON, P.J., and SERVITTO and GLEICHER, JJ.

PER CURIAM.

Defendant, Kera Elone Hill, appeals as of right her jury trial convictions of one count of assault with a dangerous weapon (felonious assault), MCL 750.82, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to two years' probation for the assault with a dangerous weapon conviction, to run concurrently to her sentence of two years' imprisonment for the felony-firearm conviction. We affirm.

## I. GREAT WEIGHT OF THE EVIDENCE

Defendant asserts that the jury's guilty verdicts on the charges of felonious assault and felony-firearm are contrary to the great weight of the evidence because of discrepancies in the testimony and evidence and the lack of credibility of the shooting victim, Stephen Jarrett.

In general, to preserve the issue for appellate review, contentions that a jury's verdict was contrary to the great weight of the evidence must be raised in a motion for a new trial. *People v Lopez*, 305 Mich App 686, 695; 854 NW2d 205 (2014). This Court reviews "for an abuse of discretion a trial court's grant or denial of a motion for a new trial on the ground that the verdict was against the great weight of the evidence." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009), citing *People v Unger,* 278 Mich App 210, 232; NW2d 272 (2008). "An abuse of discretion occurs when the trial court chooses an outcome that falls outside the range of principled outcomes." *People v Gonzalez-Raymundo*, 308 Mich App 175, 186; 862 NW2d 657 (2014), citing People *v Miller,* 482 Mich 540, 544; 759 NW2d 850 (2008).

In her appellate brief, after citing two pages of case law on the topic, defendant asserts as her argument that her convictions are contrary to the great weight of the evidence:

This is because all of the evidence that could conceivably have supported the verdicts of guilty were seriously impeached and subject to uncertainties and discrepancies.

A key discrepancy in this case relates to the nature of Stephen Jarrett's alleged gunshot wound. Mr. Jarrett's trial testimony on this matter was wildly at odds with the medical report.

In support of these assertions, defendant cites generally to "Medical Records" and five pages of the March 8, 2016 trial transcript. As routinely recognized by this Court:

It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow. Failure to brief a question on appeal is tantamount to abandoning it. [*People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001), quoting *Mitcham v Detroit*, 355 Mich 182; 94 NW2d 388 (1959).]

Because defendant has failed to explain the alleged discrepancies between the evidence and the jury's guilty verdict in the context of cited legal authority and the weight attributable to the evidence, this issue is deemed abandoned on appeal. Regardless, we find defendant's presumed arguments to lack merit.

As explained by this Court:

The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. Generally, a verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence. Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial. Further, the resolution of credibility questions is within the exclusive province of the jury. [*Lacalamita*, 286 Mich App at 469-470 (citations and quotation marks omitted).]

"The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Chambers*, 277 Mich App 1, 8; 742 NW2d 610 (2007)(citation omitted). In turn, "[t]he elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Taylor*, 275 Mich App 177, 179; 737 NW2d 790 (2007) (citation omitted).

Initially, defendant asserts the weight of the evidence presented at trial was contrary to Jarrett having incurred an "alleged gunshot wound." Contrary to defendant's contention, Jarrett testified at trial that defendant discharged a firearm twice, with one of the bullets striking Jarrett in the upper thigh or groin area. Two other witnesses, unrelated to the incident or individuals involved, Noah Purcell and Khaled Shato, testified to seeing two individuals outside the Trumbull Market and hearing an argument and gunshots. Shato observed one of the individuals to have a firearm. A police officer, Patrick Hammil, provided Jarrett with treatment for his leg wound while awaiting the arrival of emergency medical technicians.

Defendant's medical records were admitted into evidence at trial. A report authored by Dr. Earl Hartwig, within Jarrett's medical records, indicates that a "head to toe examination" of Jarrett by the trauma team after his arrival at the hospital, found "the 2 above mentioned bullet wounds either exit and entrance or 2 entrance." X-rays were taken and did not reveal the existence of a foreign body "in the abdomen" or a foot fracture. The physician noted, "He [referring to Jarrett] does have a notable gunshot wound to the medial aspect of the upper thigh as well as a wound to the medial aspect of the posterior upper thigh or gluteal crease area." Also noted was "an abrasion . . . to the plantar aspect of the right great toe with mild tenderness to palpation[.]" A history and physical completed at the hospital indicates: "No deformity, tenderness of left thigh near site of bullet wound entry and exit; no drainage of blood from the area, through and through injury." As such, any conclusion by the jury in finding defendant guilty of felonious assault and felony-firearm was supported by evidence adduced at trial that Jarrett was shot and sustained a gunshot wound. At trial, defense counsel challenged Jarrett while he was under oath regarding having incurred the injuries he alleged. The medical records, however, confirm Jarrett's injuries. Hence, with regard to this aspect of defendant's assertions, the verdict is not contrary to the great weight of the evidence.

To the extent defendant takes issue with contradictions in the testimony adduced at trial from Jarrett and, his friend, Deon Johnson regarding how events unfolded and transpired when compared to explanations provided by Jarrett to medical personnel while undergoing treatment, such discrepancies were explored at trial. For instance, at trial, Jarrett indicated that defendant discharged her firearm twice, with one bullet striking him. At the hospital, during the history and physical, Jarrett indicated having been shot "3 times." In addition, in the medical records, Jarrett is reported as having stated that the shoes were found on a porch, rather than near a trash can as asserted at trial. While significant discrepancies exist in Jarrett's and Johnson's testimony in court and their recounting of the events to police and hospital personnel immediately following their occurrence, the issues that arise are ones of credibility. "Questions regarding credibility are not sufficient grounds for relief unless the 'testimony contradicts indisputable facts or laws,' the 'testimony is patently incredible or defies physical realities,' the 'testimony is material and . . . so inherently implausible that it could not be believed by a reasonable juror,' or the 'testimony has been seriously impeached and the case is marked by uncertainties and discrepancies.' " *People v Solloway*, 316 Mich App 174, 183; 891 NW2d 255 (2016) (citation omitted).

At sentencing, the trial court recognized that credibility issues existed with regard to Jarrett, Johnson, defendant, and her codefendant, Ruben Earl Sanders, particularly with regard to how the shoes were obtained or found. Yet, testimony and evidence did demonstrate that defendant pursued Jarrett and Johnson and ultimately discharged a firearm, striking Jarrett in the

upper thigh. Thus, while issues of credibility arose regarding why defendant confronted Jarrett and Johnson, the evidence that defendant pursued the young men and ultimately fired a weapon, striking and injuring Jarrett, is not contrary to the great weight of the evidence and supported her convictions. The resolution of any discrepancies in the testimony and evidence, in conjunction with the determination of Jarrett's credibility and the weight to be attributed to his testimony and the evidence, are solely within the purview of the jury, and "[t]his Court should not interfere with the jury's role of determining the weight of the evidence or the credibility of the witnesses." *People v Bulmer*, 256 Mich App 33, 36; 662 NW2d 117 (2003), citing *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992), amended 441 Mich. 1201; 489 NW2d 748 (1992).

## II. INSTRUCTIONAL ERROR

Defendant contends that the trial court's provision of the deadlocked jury instruction was inadequate because it failed to explicitly contain the wording of M Crim JI 3.12 and MCR 2.513(N)(4).

In order to preserve a claim of instructional error, a defendant must object or request the provision of a different instruction before the jury initiates deliberations. MCR 2.512(C); *People v Gonzalez*, 256 Mich App 212, 225; 663 NW2d 499 (2003). Following the receipt of notes from the jury pertaining to their deliberations having stalled, the trial court instructed that deliberations were to continue and ultimately provided the jury with deadlocked jury instructions. Defense counsel did not object to the instructions provided by the trial court, thereby failing to preserve this issue for appellate review.

"The standard of review applicable to a denial of a motion for a new trial is whether the trial court abused its discretion." *People v Abraham*, 256 Mich App 265, 269; 662 NW2d 836 (2003). "An abuse of discretion occurs when a trial court's decision 'falls outside the range of reasonable and principled outcomes.' " *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017) (citation omitted). This Court reviews claims of instructional error de novo. *People v Fennell*, 260 Mich App 261, 264; 677 NW2d 66 (2004). A trial court's decision on whether a jury instruction was necessary based on the applicable facts is generally reviewed for an abuse of discretion. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006) (citation omitted). "This Court reviews jury instructions in their entirety to determine whether there is error requiring reversal. We will not reverse a conviction if the instructions fairly presented the issues to be tried and sufficiently protected the defendant's rights." *Gonzalez*, 256 Mich App at 225 (citations omitted). Unpreserved issues of instructional error, however, are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "To avoid forfeiture of an unpreserved claim, the defendant bears the burden of establishing that: (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights. Reversal is warranted only when the plain, unpreserved error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence." *People v Everett*, 318 Mich App 511, 526-527; 899 NW2d 94 (2017) (citations and quotation marks omitted).

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him. Accordingly, jury instructions must include all the elements of the charged offenses and any material issues, defenses, and theories that are supported by the evidence." *Everett*, 318 Mich App at 527 (citations and quotation marks omitted). In general, "[e]ven if imperfect, a jury instruction is not grounds for setting aside a conviction 'if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights.' " *People v Henderson*, 306 Mich App 1, 4; 854 NW2d 234 (2014) (citation omitted). In other words, if a "[trial] court's instructions were responsive to the jury's request and not misleading in any way," there is no basis to set aside a defendant's conviction. *People v Parker*, 133 Mich App 358, 362; 349 NW2d 514 (1984).

After the jury has begun to deliberate, a trial court "*may* give additional instructions that are appropriate." MCR 2.513(N)(1) (emphasis added). "The extent of additional instructions to the jury is within the discretion of the trial court." *People v Perry*, 114 Mich App 462, 467; 319 NW2d 559 (1982). A trial court is not required to immediately provide the deadlocked jury instruction when a jury asserts that it has reached an impasse. *People v Lett*, 466 Mich 206, 222-223; 644 NW2d 743 (2002). If a jury informs a trial court that it cannot agree upon a verdict, the trial court may elect to provide supplemental jury instructions and direct the jury to continue deliberations. *People v Hardin*, 421 Mich 296, 316, 320; 365 NW2d 101 (1984); *People v Sullivan*, 392 Mich 324, 327-329, 333-336, 341-342; 220 NW2d 441 (1974); see also MCR 2.513(N)(1) ("After jury deliberations begin, the court may give additional instructions that are appropriate."). Specifically, MCR 2.513(N)(4), states:

> *Clarifying or Amplifying Final Instructions.* When it appears that a deliberating jury has reached an impasse, or is otherwise in need of assistance, the court may invite the jurors to list the issues that divide or confuse them in the event that the judge can be of assistance in clarifying or amplifying the final instructions.

"The optimum instruction will generate discussion directed towards the resolution of the case but will avoid forcing a decision." *Sullivan*, 392 Mich at 334. However, "[i]f the charge has the effect of forcing a juror to surrender an honest conviction, it is coercive and constitutes reversible error." *Id*.

The deadlocked jury instruction[1] is contained in M Crim JI 3.12, which states:

> (1) You have returned from deliberations, indicating that you believe you cannot reach a verdict. I am going to ask you to please return to the jury room and resume your deliberations in the hope that after further discussion you will be able to reach a verdict. As you deliberate, please keep in mind the guidelines I gave you earlier.

---

[1] In March of 2014, MCR 2.512(D)(2) was amended and now requires a trial court provide the Model Criminal Jury Instructions if "(a) they are applicable, (b) they accurately state the applicable law, and (c) they are requested by a party."

(2) Remember, it is your duty to consult with your fellow jurors and try to reach agreement, if you can do so without violating your own judgment. To return a verdict, you must all agree, and the verdict must represent the judgment of each of you.

(3) As you deliberate, you should carefully and seriously consider the views of your fellow jurors. Talk things over in a spirit of fairness and frankness.

(4) Naturally, there will be differences of opinion. You should each not only express your opinion but also give the facts and the reasons on which you base it. By reasoning the matter out, jurors can often reach agreement.

(5) If you think it would be helpful, you may submit to the bailiff a written list of the issues that are dividing or confusing you. It will then be submitted to me. I will attempt to clarify or amplify the instructions in order to assist you in your further deliberations.

(6) When you continue your deliberations, do not hesitate to rethink your own views and change your opinion if you decide it was wrong.

(7) However, none of you should give up your honest beliefs about the weight or effect of the evidence only because of what your fellow jurors think or only for the sake of reaching agreement.

Although the *Sullivan* Court determined that "[a]ny substantial departure [from the instruction] shall be grounds for reversible error," *Sullivan*, 392 Mich at 342, the *Hardin* Court elucidated the test for determining what constitutes a "substantial departure" from the instruction, indicating that the criteria to be applied is whether the instruction has an undue tendency of coercion − e.g., could the instruction given cause a juror to abandon his conscientious dissent and defer to the majority solely for the sake of reaching agreement? *Hardin*, 421 Mich at 314. To determine if an impermissible threshold has been crossed by the instruction provided, the instruction is to "be examined in the factual context in which it is given" in order to ascertain whether a resultant coercive effect occurred on the jury. *Id*. at 321. "Where additional language contains 'no pressure, threats, embarrassing assertions, or other wording that would cause this Court to feel that it constituted coercion,' that additional language rarely would constitute a substantial departure." *Id*. at 315, (citation omitted).

Approximately two days into their deliberations, the jury sent the trial court notes asking for clarification on "aiding and abetting" and the availability of the evidence admitted at trial for their review. The trial court responded by referring the jury to the copy of the instructions provided, reiterating that each crime charged was to be separately considered "in light of all the evidence," that the jury was to use the law provided to it by the trial court and affirming that "[t]he Court will present you with all of the evidence we have it [sic] here." The jury, without indicating it was deadlocked, did inquire of the trial court how they were to proceed should a deadlock occur on any charge. The trial court declined to address the concern, informing the jury that it would wait until the jury had sufficient time to review the evidence it had requested and the opportunity to continue to deliberate. The trial court, however, also instructed the jury

that should it need further assistance in understanding the law or evidence it was encouraged to send a note to the trial court, but that it should first "continue with your deliberations." Approximately an hour later, the jury sent a note to the trial court requesting that it respond to the inquiry regarding how to proceed if deadlock occurs.

The trial court responded by reminding the jury that the trial spanned several days and instructing them to "return to the jury room and resume your deliberations." The trial court suggested that further discussion might facilitate the jury's ability to reach a decision and reminded the jury of the guidelines provided earlier. In addition, the trial court instructed the jury to consult with each other and to make an effort to reach an agreement but "without violating your own [individual] judgment." The trial court encouraged the members of the jury to "deliberate" and "carefully consider the views of your fellow jurors and talk things over in a spirit of fairness and frankness." Recognizing that differences of opinion will occur, the trial court also encouraged the jurors to express their individual opinions and supporting reasoning, but to feel free to "change your opinion if you decide that it was wrong." The trial court cautioned, however, that "none of you should give up your honest beliefs about the weight or affect [sic] of the evidence only because of what your fellow jurors think or only for the sake of reaching an agreement." Further, in instructing the jury to continue its deliberations, the trial court twice encouraged the jury to send the trial court a note if it required any assistance, did not comprehend the law, or for any other concerns.

Contrary to defendant's contention, the trial court's provision of the deadlocked jury instruction, although not verbatim of M Crim JI 3.12, was sufficient and did not comprise error. The trial court's instruction is completely consistent with the provisions of the standard jury instruction in both content and spirit. The trial court encouraged the jury to continue its deliberations and to be open-minded and receptive to the opinions of the various members of the jury but admonished the jurors to not abandon their "own judgment" merely for the sake of compromise or to reach an agreement. On two occasions within the deadlock instruction, the trial court encouraged the jury to send it a note if it required further assistance or had additional questions to be addressed. Even though not delivered verbatim, because the trial court's supplemental instruction to the jury was neither coercive, nor did it encourage any juror to abandon a firmly held belief regarding the evidence or verdict to be rendered, the deadlocked jury instruction, as provided, was sufficient and was not a substantial departure from the standard instruction and did not comprise error. *Sullivan*, 392 Mich at 342; *Hardin*, 421 Mich at 314-315.

Further, defendant's suggestion that the trial court's instruction comprised error and possibly resulted in a juror abandoning their conscientious dissent in order to obtain a resolution is without merit or substantiation by the trial court record. Defendant contends that this possibility of a negative outcome, premised on instructional error, exists because: (a) the verdicts were confusing or inconsistent, (b) the verdicts occurred quickly following the provision of the deadlocked jury instruction, and (c) the lack of any request for further clarification from the jury suggested they engaged in negotiation rather than deliberation. Defendant's arguments are factually incorrect and nonsensical.

First, the jury's verdicts are not inconsistent. Defendant was found guilty of both felonious assault and felony-firearm. In other words, the jury believed that defendant had a gun, which she used to shoot and injure Jarrett. In finding her codefendant, Sanders, guilty of only

fleeing a police officer, the jury must have found Sanders' assertion that he did not know defendant before the events or that she possessed a weapon to be credible, thus absolving him of the assault and firearms charges premised on aiding and abetting defendant. Second, the jury's verdict did not occur immediately after the deadlocked jury instruction was provided. The instruction was given to the jury on March 14, 2016, at 2:42 p.m. The jury did not, however, render its verdict until March 15, 2016, at 2:38 p.m., indicating a number of hours of further deliberation. Finally, defendant contends that the absence of any further notes or requests from the jury suggests "that the jury might have prioritized negotiating an agreement, rather than rigorously deliberating." This is merely speculation on the part of defendant. The jury's continuation of its deliberations without requests for further clarification from the trial court could as easily be construed as having taken the instructions received to heart and engaging in a deliberative and thorough review of the evidence and testimony and leading to a resolution accepted by all of the jurors, as demonstrated by the polling conducted at the conclusion of the verdict. "Jurors are presumed to follow their instructions[.]" *Abraham*, 256 Mich App at 279.

Defendant's contention that the trial court erred by not following the requirements of MCR 2.513(N)(4) is also meritless. The subsection of the court rule indicates only that a "court may invite the jurors to list the issues that divide or confuse them in the event that the judge can be of assistance in clarifying an amplifying the final instructions" if an "impasse" has occurred. MCR 2.513(N)(4). First, the trial court twice instructed the jury, as part of its deadlocked jury instruction, that if the jury did not "understand the law, need some assistance from the Court then you know just send me a note." Second, the language contained in the court rule is discretionary and not mandatory. *People v Bell*, 276 Mich App 342, 347; 741 NW2d 57 (2007) (citation and quotation marks omitted) ("The use of the term 'shall' rather than 'may' indicates mandatory rather than discretionary action.").

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant asserts she was denied the effective assistance of counsel at trial, premised on two alleged errors by counsel: (a) the failure to request an adjournment after receiving Jarrett's medical records at the beginning of the first day of trial and (b) failing to object to the trial court's deadlocked jury instruction.

"A defendant must move the trial court for a new trial or evidentiary hearing to preserve the defendant's claim that his or her counsel was ineffective." *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014), citing *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973). "A criminal defendant has the fundamental right to effective assistance of counsel. A defendant's claim of ineffective assistance of counsel 'is a mixed question of fact and constitutional law.' Generally this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of law." *Lane*, 308 Mich App at 67-68 (citation omitted).

"To prove that his defense counsel was not effective, the defendant must show that (1) defense counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that counsel's deficient performance prejudiced the defendant. We must presume that counsel provided effective assistance. A defendant was prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different." *Lane*, 308 Mich App at 68 (citations omitted).

Initially, defendant's assertion that her trial counsel was ineffective for failing to object to the trial court's deadlocked jury instruction is meritless. As discussed, *supra*, the instruction provided by the trial court, while not a verbatim recitation of M Crim JI 3.12, was sufficient in its content and wording to reflect the requirements and intent of the standard instruction. *Sullivan*, 392 Mich at 342; *Hardin*, 421 Mich at 314-315. Because of the propriety of the instruction provided, defendant's counsel was "not required to raise [a] meritless or futile objection[.]" *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (citation omitted).

Next, defendant asserts that the failure of defense counsel to request an adjournment of the trial in order to have the opportunity to further study Jarrett's medical records comprised ineffective assistance of counsel because the additional time afforded might have resulted in a different trial outcome. Defendant contends that her attorney did not receive Jarrett's medical records until the first day of trial, based on a statement made by defense counsel during closing argument. However, before trial initiated on March 7, 2016, the prosecutor indicated that she was receiving the medical records on March 4, 2016, and would contact both attorneys (defense counsel and counsel for Sanders) when they were received. Cross-examination of Jarrett did not initiate until the second day of trial on March 8, 2016. The relevant medical records documented one contact by Jarrett with hospital personnel on December 31, 2015, comprising three hours.

Defense counsel was able to cross-examine Jarrett on his alleged wound using the medical records and also sought to impeach Jarrett's testimony at trial with the content of the medical records. Defendant fails to elucidate or provide any specificity regarding what information or benefit could have been obtained had defense counsel requested more time to review the records, or how additional time would have altered the content of the records.

Defendant implies that with additional time counsel would have located information within the records to impeach Jarrett's testimony and contradict that he was wounded, but fails to identify any such information to be gleaned from the medical records that would be informative or relevant beyond that already raised at trial. Further, there is no basis for defendant's implication that Jarrett did not actually incur a gunshot wound given the content of the medical records affirming the existence and treatment of Jarrett for a gunshot wound shortly after the date and time of the events alleged.

As noted previously:

> It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow. Failure to brief a question on appeal is tantamount to abandoning it. [*Kevorkian*, 248 Mich App at 389, quoting *Mitcham* 355 Mich at 203.]

Defendant's contention regarding the ineffectiveness of her counsel is belied by the lower court record, which demonstrates that defense counsel cross-examined Jarrett extensively on the content of the medical records and the discrepancies between his reports to medical personnel

and the police when compared to his testimony at trial.  As such, defendant's assertion that her trial counsel was ineffective is without merit.

Affirmed.


/s/ Thomas C. Cameron
/s/ Deborah A. Servitto
/s/ Elizabeth L. Gleicher