*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DERRICK HOWARD-LARKIN,

        Defendant-Appellant.

UNPUBLISHED
April 2. 2020

No. 343420
Wayne Circuit Court
LC No. 17-008840-01-FC

Before: M. J. KELLY, P.J., and FORT HOOD and BORRELLO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of assault with intent to murder (AWIM), MCL 750.83, felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced, as a second habitual offender, MCL 769.10, to concurrent prison terms of 15 to 30 years for the AWIM conviction and one to five years for the felon-in-possession conviction, with those sentences to be served consecutively to a sentence of two years' imprisonment for the felony-firearm conviction. For the reasons set forth in this opinion, we affirm the convictions and sentences of defendant.

## I. BACKGROUND

This appeal arises from the October 6, 2017 assault of Troy Tisdale outside of a liquor store in Detroit, Michigan. Tisdale was selling movies and music from a cart outside of the liquor store that night, which was something he did every day from 6:00 p.m. to 10:00 p.m. At some point that night, defendant and his brother, DeAndre Harris, arrived at the liquor store in a gray car. Harris was the ex-boyfriend of Taisha Brunsun, and Brunsun was also the mother of Tisdale's three children. Harris had recently discovered that Tisdale was currently living with Brunsun.

Surveillance cameras outside of the liquor store captured the events that took place once defendant and Harris arrived, including the physical altercation involving defendant, Harris, and

-1-

Tisdale. This surveillance footage was admitted as an exhibit at trial and played for the jury.[1] Tisdale testified that Harris directed insults and threatening statements at him and that the confrontation became physical after Harris threw a glass beer bottle at Tisdale and then "rushe[d] in" at him. Tisdale fought back, and the two began "tussling." Defendant then attacked Tisdale, and Tisdale stopped fighting Harris in order to fight defendant. At some point in the altercations, Tisdale picked up a knife from the ground. Tisdale testified that he did not know where the knife came from. Tisdale testified that he used the knife to try to get defendant and Harris to back away and that he told them to leave him alone. Defendant walked away, and Tisdale threw the knife down.

As the confrontation continued between Tisdale and Harris, defendant returned. According to the surveillance video and Tisdale's testimony, defendant walked up to Tisdale, aimed a handgun toward Tisdale's head, and fired. Tisdale ducked and avoided being shot. He grabbed defendant, and a struggle over the gun ensued during which defendant lost control of the gun. Tisdale heard defendant say, "Pick the gun up. Shoot this mutha-f*cka." The surveillance footage shows defendant holding Tisdale down as Harris reappears on camera, pulls up his hood, and then holds a gun against Tisdale's upper back or shoulder. Then defendant released Tisdale, and defendant and Harris walked away. Tisdale walked away in the opposite direction. Tisdale testified that at some point during this struggle he heard two more gunshots. After the altercation ended, Tisdale realized he had been shot. Tisdale was eventually transported to Sinai-Grace Hospital with a gunshot wound to his left shoulder, and lacerations to his lip and elbow.

## II. OV 6

On appeal, defendant first argues that the trial court erred by assessing him 50 points for offense variable (OV) 6 because the jury's finding that defendant was guilty of AWIM did not resolve the question whether defendant acted with premeditation and the trial judge thus "was making her own factual determination of [defendant's] state of mind in scoring OV6."

Defendant objected to the scoring of OV 6 at sentencing and thereby preserved this issue for appellate review. See *People v Clark*, 315 Mich App 219, 223; 888 NW2d 309 (2016) ("To preserve a sentencing issue for appeal, a defendant must raise the issue at sentencing, in a proper

---

[1] Neither counsel provided this surveillance video to this Court for our review, despite the fact that both appellate counsel referred to this video footage in their respective briefs and its significant bearing on defendant's sentencing issue. However, we note that Harris has provided us with the liquor store's surveillance video as part of his appeal in the companion case in Docket No. 345136, which is also currently before this panel. This video footage comports with the relevant testimony related to this video footage in the instant case, and there is no indication that the relevant video clips provided by Harris materially differ from the relevant portion of those that were admitted in the instant case. Therefore, we have reviewed and considered this video footage in resolving defendant's appellate issues, although we admonish counsel for not providing this Court with pertinent trial exhibits such as this video footage.

motion for resentencing, or in a proper motion to remand filed in the court of appeals.") (quotation marks and citation omitted).

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.* "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Antwine*, 293 Mich App 192, 194; 809 NW2d 439 (2011) (quotation marks and citation omitted).

Although the sentencing guidelines are now advisory, trial courts are still required to assess the "highest number of points possible" under the facts for all offense variables. *People v Lockridge*, 498 Mich 358, 391-392 & n 28; 870 NW2d 502 (2015). OV 6 is contained in MCL 777.36, which relates to a defendant's "intent to kill or injure another individual" and provides in full as follows:

> (1) Offense variable 6 is the offender's intent to kill or injure another individual. Score offense variable 6 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

> (a) The offender had premeditated intent to kill or the killing was committed while committing or attempting to commit arson, criminal sexual conduct in the first or third degree, child abuse in the first degree, a major controlled substance offense, robbery, breaking and entering of a dwelling, home invasion in the first or second degree, larceny of any kind, extortion, or kidnapping or the killing was the murder of a peace officer or a corrections officer ............................. 50 points

> (b) The offender had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result ............................ 25 points

> (c) The offender had intent to injure or the killing was committed in an extreme emotional state caused by an adequate provocation and before a reasonable amount of time elapsed for the offender to calm or there was gross negligence amounting to an unreasonable disregard for life .............................. 10 points

> (d) The offender had no intent to kill or injure ........................ 0 points

> (2) All of the following apply to scoring offense variable 6.

> (a) The sentencing judge shall score this variable consistent with a jury verdict unless the judge has information that was not presented to the jury.

(b) Score 10 points if a killing is intentional within the definition of second degree murder or voluntary manslaughter, but the death occurred in a combative situation or in response to victimization of the offender by the decedent.

A trial court must score OV 6 "for homicide, attempted homicide, conspiracy or solicitation to commit a homicide, or *assault with intent to commit murder*." MCL 777.22(1) (emphasis added). "The elements of assault with intent to commit murder are (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Ericksen*, 288 Mich App 192, 195-196; 793 NW2d 120 (2010) (quotation marks and citation omitted).

Because defendant in this case was convicted of AWIM, which requires an actual intent to kill, *id*., the trial court was required to assess either 50 or 25 points to be consistent with the jury verdict unless it had information that was not presented to defendant's jury. MCL 777.36(1)(a)-(d), (2)(a).[2] On appeal, defendant does not point to any information that was possessed by the sentencing judge but not presented to his jury that would tend to have any bearing on the intent with which defendant acted such that the trial court could have scored OV 6 in a manner inconsistent with the jury's verdict finding defendant guilty of AWIM.

Furthermore, contrary to defendant's assertion on appeal, defendant's jury was instructed during final jury instructions to consider whether defendant acted under circumstances where his thinking was disturbed by emotional excitement to the point that an ordinary person would have acted impulsively, based on passion rather than judgment, and before a reasonable time to calm down had passed. The trial court specifically explained to the jury that it could not find defendant guilty of AWIM if the assault took place under circumstances that would have reduced the crime to voluntary manslaughter rather than murder had the victim died. By convicting defendant of AWIM, the jury necessarily rejected the notion that defendant acted while in an "extreme emotional state caused by an adequate provocation and before a reasonable amount of time elapsed . . . to calm," and this provision that would have allowed for 10 points to be assessed under OV 6 was therefore inapplicable. MCL 777.36(1)(c) and (2)(a). Hence, the question becomes whether defendant's intent was premeditated (justifying an assessment of 50 points) or unpremeditated (warranting an assessment of 25 points). MCL 777.36(1)(a) and (b).

---

[2] Although defendant appears to argue that the trial court could score OV 6 in a manner not consistent with the jury's verdict because the trial court and Harris's jury heard that defendant's "brother and co-defendant Deandre Harris told the police . . . that Mr. Harris claimed he did not even know his brother came with a gun that day," we do not understand how this assertion demonstrates anything about the nature of *defendant's* intent. Regardless of what Harris knew relative to defendant's possession of a handgun, the record evidence demonstrates that defendant left the fight and then returned to the fight with a gun that he fired at Tisdale's head. As will be more fully explained in the body of this opinion, our review of the evidence leads us to conclude that the trial court did not clearly err by determining that a preponderance of the evidence established that defendant acted with the premeditated intent to kill and thus assessing 50 points for OV 6.

Regarding premeditated intent, this Court has explained as follows:

> To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem. As a number of courts have pointed out, premeditation and deliberation characterize a thought process undisturbed by hot blood. While the minimum time necessary to exercise this process is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a "second look." [*People v Plummer*, 229 Mich App 293, 300; 581 NW2d 753 (1998) (quotation marks and citation omitted).]

"Premeditation . . . requires sufficient time to permit the defendant to take a second look [and] may be inferred from the circumstances surrounding the [crime]." *People v Coy*, 243 Mich App 283, 315; 620 NW2d 888 (2000). Additionally, "factors that may be considered to establish premeditation include the following: (1) the previous relationship between the defendant and the victim; (2) the defendant's actions before and after the crime; and (3) the circumstances of the [crime] itself, including the weapon used and the location of the wounds inflicted." *Plummer*, 229 Mich App at 300. "[A] time lapse ranging from one second to one minute" between securing possession of a firearm and the use of it can be sufficient to support a finding of premeditation. *People v Tilley*, 405 Mich 38, 45; 273 NW2d 471 (1979).

Here, the video footage and Tisdale's trial testimony reflect that defendant ceased physically fighting with Tisdale, walked away, and then returned with a firearm. Once armed with the firearm, defendant aimed at Tisdale's head and shot at him. According to the camera angle showing the shooting, at least 25 seconds elapsed between the time when defendant is off camera while Harris continued to struggle with Tisdale and the time when defendant returned and fired his weapon at Tisdale. After defendant lost control of the handgun in his struggle with Tisdale, defendant told Harris to pick up the gun and shoot Tisdale. The evidence supports the conclusion that under these circumstances, defendant had sufficient time to take a "second look" before deciding to follow through on his decision to shoot at Tisdale and acted with premeditated intent. *Tilley*, 405 Mich at 45; *Plummer*, 229 Mich App at 300; *Coy*, 243 Mich App at 315. The fact that defendant previously ended his physical involvement in the altercation and then returned with a firearm, aimed his weapon at Tisdale's face, and then fired it at Tisdale further demonstrates defendant's premeditative intent. *Plummer*, 229 Mich App at 300. The trial court's conclusion that 50 points were justified under OV 6 because defendant acted with premeditative intent was supported by a preponderance of the evidence, and the trial court did not clearly err in making this factual determination. *Hardy*, 494 Mich at 438.

Although defendant correctly notes that the elements necessary for establishing the offense of AWIM only refer to an intent to kill and not whether that intent was premeditated, defendant is nonetheless incorrect in arguing that the trial court was prohibited from making its own factual determination on the issue of premeditation for purposes of scoring OV 6 at sentencing. Our Supreme Court in *Lockridge* did not prohibit judicial fact-finding at sentencing for scoring OVs, but instead held that the guidelines are advisory such that judicial fact-finding at sentencing is not unconstitutional. *Lockridge*, 498 Mich at 391-392 & n 28, 399. In fact, responding to Chief Judge Roberts' statements in his dissent in *Alleyne v United States*, 570 US 99, 128; 133 S Ct 2170; 186 L Ed2d 314 (2013) our Supreme Court opined: "In other words, unrestrained judicial discretion

within a broad range is in; legislative constraints on that discretion that increase a sentence (whether minimum or maximum) beyond that authorized by the jury's verdict are out." Thus, it becomes clear that defendant's statements regarding judicial fact-finding relative to this case are contrary to published Michigan Supreme Court authority and the trial court's finding in this case, that defendant's intent to kill was premeditated, was not inconsistent with the jury's verdict of guilt regarding AWIM. See MCL 777.36(2)(a). Accordingly, defendant is not entitled to relief on this issue.

## III. JOINDER

Defendant next argues on appeal that the joint trial of defendant and Harris before separate juries affected his substantial rights and that the trial court should have ordered entirely separate trials.

Defendant concedes on appeal that this issue is unpreserved because he did not request a separate trial or complete severance,[3] nor did he object to the trial court's use of a single joint trial with two separate juries. Where a defendant fails to move for a separate trial, the issue is not preserved for appellate review. See *People v Daniel*, 207 Mich App 47, 53; 523 NW2d 830 (1994). Because this issue is unpreserved, our review is for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

In addressing defendant's appellate argument, we first note that the use of separate juries in a single joint trial of codefendants "is a partial form of severance to be evaluated under the standard . . . applicable to motions for separate trials." *People v Hana*, 447 Mich 325, 351; 524 NW2d 682 (1994). Our Supreme Court has explained that the dual-jury procedure is actually one method of diminishing the risk of prejudice in a joint trial of codefendants. See *Id*. at 351, 360. When a challenge to this procedure is raised on appeal, the issue "is whether there was prejudice to substantial rights after the dual-jury system was employed." *Id*. at 359.

> [S]everance should be granted only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Otherwise stated, the defendant must show that the magnitude of the prejudice denied him a fair trial. . . . [R]eversible prejudice exists when one of the defendant's substantive rights, such as the opportunity to present an individual defense, is violated. [*Id*. at 359-360 (quotation marks and citations omitted; ellipsis and second alteration in original).]

---

[3] See *People v Hana*, 447 Mich 325, 351; 524 NW2d 682 (1994) (stating that the "use of separate juries is a partial form of severance to be evaluated under the standard . . . applicable to motions for separate trials").

Here, defendant has failed to make any cogent argument explaining how any specific substantive right was compromised at his trial.[4] Although he asserts that his ability to place the blame on Harris was limited by the joint trial procedure, defendant provides no clear explanation for how his ability to present such a defense was impaired. Further, defendant does not explain how the use of separate juries failed to protect his right to present any defense of his choosing. Rather, defendant conclusively asserts that the trial outcome "may well have been different" if both juries had not been able to observe both defendants' cross-examinations. In the absence of any evidence or clear argument in support of this statement, we must decline defendant's invitation to engage in speculation as to what *may* have occurred had defendant been tried in a completely separate proceeding. In the absence of any evidence of prejudice, defendant has not established plain error requiring reversal based on the dual-jury procedure that was used in his joint trial. *Id.* at 363 (holding that "[i]n the absence of demonstrated prejudice to the defendants' substantial rights," the trial court's decision to conduct a joint trial with separate juries did not represent an abuse of discretion). As such, defendant is not entitled to relief on this issue.

## IV. JURY INSTRUCTION

Next, defendant argues on appeal that the trial court committed reversible error by giving an improper, coercive supplemental jury instruction to his jury after deliberations had begun and that the trial court should have instead given a deadlocked jury instruction.

After defendant's jury had begun its deliberations, the trial court received a note from defendant's jury that stated:

"Honorable Judge, can you let some jurors know that we should decide on this case only not on sympathy for the defendant because we have a family member that was convicted on a case or made a mistake and end[ed] up in trouble with the law?"

In response to the jury's note, the trial court stated:

Members of the jury, I received your note this morning and I have to tell you that this note is very concerning and alarming because it suggests to me that someone or some among you are not following the oath that you took or instructions that you were given and this is something that was discussed during voir dire. The lawyers talked to you about this and I'm pretty sure I talked to you all about this . . . . Now you all, I mean, I talk a little fast and I read the instructions to you and I think I read to you at least twice, if not three times, an instruction that says, "Remember that you have taken an oath to return a true and just verdict based only on the evidence and my instructions on the law. You must not let sympathy or prejudice influence your decision", so that means this case is about this case. You have to decide this case based on the evidence presented in this case. You can't let sympathy for either

---

[4] For this reason, we could additionally consider this issue abandoned. *People v Green*, 313 Mich App 526, 535; 884 NW2d 838 (2015) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims . . . .") (quotation marks and citation omitted).

side, be it the victim or the defendant, affect your decision. You have to look at the evidence and decide whether it convinces you beyond a reasonable doubt that the crime occurred; that the defendant is the person who committed it and, most importantly, that the elements of the offenses have been proven beyond a reasonable doubt; that's it. This case isn't about anything or anyone else other than the evidence and the testimony that was presented here in this case, do you all understand that?

The jury answered affirmatively and was excused to continue deliberating. Less than an hour and a half later, the jury reached a verdict finding defendant guilty of AWIM, felon-in-possession, and felony-firearm.

As an initial matter, we note that defendant did not object to the trial court's supplemental jury instruction. "A party may assign as error the giving of or the failure to give an instruction only if the party objects on the record before the jury retires to consider the verdict (or, in the case of instructions given after deliberations have begun, before the jury resumes deliberations), stating specifically the matter to which the party objects and the grounds for the objection." MCR 2.512(C). Our Supreme Court has stated that the failure to timely object to a supplemental jury instruction on the ground that it was an improper deadlocked jury instruction constitutes a waiver of any error in that respect. *People v Hardin*, 421 Mich 296, 322-323; 365 NW2d 101 (1984). The *Hardin* Court stated further, Counsel may not "sit back and harbor error to be used as an appellate parachute in the event of jury failure." *Id*. at 322 (quotation marks and citation omitted). However, more recently, our Supreme Court applied plain-error review where a defendant raised an appellate challenge to the propriety of deadlocked jury instruction to which the defendant had failed to object in the trial court. See *People v Walker*, 504 Mich 267, 276; 934 NW2d 727 (2019). Based on *Walker*, we review defendant's challenge for plain error affecting substantial rights. *Id*.

Defendant's appellate argument is premised on his related contentions (1) that the trial court should have given a deadlocked jury instruction in response to the jury's note and (2) that because the instruction given by the trial court substantially deviated from the standard deadlocked jury instruction, the instruction was improper and coercive such that the trial court committed reversible error.

Our Supreme Court in *Walker* succinctly summarized this state's deadlocked-jury-instruction jurisprudence as follows:

When a jury indicates it cannot reach a unanimous verdict, a trial court may give a supplemental instruction—commonly known as an *Allen*[5] charge—to encourage the jury to continue deliberating. *People v Sullivan*, 392 Mich 324, 329; 220 NW2d 441 (1974). The goal of such an instruction is to encourage further deliberation without coercing a verdict. *People v Hardin*, 421 Mich 296, 314; 365 NW2d 101 (1984). See *Allen v United States*, 164 US 492, 501; 17 S Ct 154; 41 L Ed 528 (1896) ("While undoubtedly, the verdict of the jury should represent the

---

[5] *Allen v United States*, 164 US 492; 17 S Ct 154; 41 L Ed 528 (1896).

opinion of each individual juror, it by no means follows that opinions may not be changed by conference in the jury room. The very object of the jury system is to secure unanimity by a comparison of views . . . ."). "If the charge has the effect of forcing a juror to surrender an honest conviction, it is coercive and constitutes reversible error." *Sullivan*, 392 Mich at 334 (quotation marks and citation omitted).

In *Sullivan*, this Court adopted a standard deadlocked-jury instruction that has since been incorporated into our model jury instructions.[6] *Id*. at 341; M Crim. JI 3.12. Although the model instruction is an example of an instruction that strikes the correct balance, it is not the only instruction that may properly be given. The relevant question is whether "the instruction given [could] cause a juror to abandon his [or her] conscientious dissent and defer to the majority solely for the sake of reaching agreement[.]" *Hardin*, 421 Mich at 314. The inquiry must consider the

---

[6] M Crim. JI 3.12 provides the following:

(1) You have returned from deliberations, indicating that you believe you cannot reach a verdict. I am going to ask you to please return to the jury room and resume your deliberations in the hope that after further discussion you will be able to reach a verdict. As you deliberate, please keep in mind the guidelines I gave you earlier.

(2) Remember, it is your duty to consult with your fellow jurors and try to reach agreement, if you can do so without violating your own judgment. To return a verdict, you must all agree, and the verdict must represent the judgment of each of you.

(3) As you deliberate, you should carefully and seriously consider the views of your fellow jurors. Talk things over in a spirit of fairness and frankness.

(4) Naturally, there will be differences of opinion. You should each not only express your opinion but also give the facts and the reasons on which you base it. By reasoning the matter out, jurors can often reach agreement.

(5) If you think it would be helpful, you may submit to the bailiff a written list of the issues that are dividing or confusing you. It will then be submitted to me. I will attempt to clarify or amplify the instructions in order to assist you in your further deliberations.

(6) When you continue your deliberations, do not hesitate to rethink your own views and change your opinion if you decide it was wrong.

(7) However, none of you should give up your honest beliefs about the weight or effect of the evidence only because of what your fellow jurors think or only for the sake of reaching agreement.

factual context in which the instruction was given and is conducted on a case-by-case basis. *Sullivan*, 392 Mich at 332-334. [*Walker*, 504 Mich at 276-278 (third and fourth alterations in original).]

In this case, however, the trial court did not purport to give a deadlocked jury instruction, and there was no need for it to give such an instruction because there is no indication apparent from this record that the jury was deadlocked or believed that it would be unable to reach a unanimous verdict. See *id*. at 276. Defendant did not request a deadlocked jury instruction, and there is no requirement that a trial court give a deadlocked jury instruction sua sponte. See *People v Lett*, 466 Mich 206, 222; 644 NW2d 743 (2002).[7]

Instead, the trial court responded to a request made by the jury, which was for the trial court to remind the jury that its decision in the case was not to be based on sympathy or incidents extraneous to the proceedings. A jury is permitted to submit "written questions about the jury instructions that arise during deliberations," and the court may "provide the jury with a specific response to the jury's question." MCR 2.513(N)(2). Here, the trial court addressed the jury's request by essentially repeating instructions that it had already given during preliminary and final jury instructions. The trial court expanded on the concepts in these instructions somewhat in responding to the jury's note, but the essence of the trial court's supplemental instruction was that the jury members had taken an oath to render a decision based only on the evidence presented at trial and the court's instructions on the law and that the jurors were not to let sympathy for either the victim or defendant to affect the decision-making process. Defendant does not explain how such instructions were improper, and we discern nothing improperly coercive about these instructions. Indeed, the trial court's supplemental instructions parallel portions of M Crim JI 3.1 and M Crim JI 3.5.

Unlike the deadlocked-jury instruction in *Walker*, which our Supreme Court concluded was unduly coercive and constituted plain error requiring reversal, *Walker*, 504 Mich at 279-282, 284-285, the trial court's instruction in this case did not include an attempt to single out individual jurors or an invitation to the jurors to report individual jurors who, as relevant to the circumstances at issue in this case, had apparently been susceptible to allowing feelings of sympathy to influence their reasoning. To the extent that the trial court's instruction in this case could be characterized as an admonishment to the jury, it was nonetheless addressed in general terms directed at the jury as a whole and was simply a reminder to follow the trial court's previous instructions to decide the case based solely on the evidence and the court's instructions on the law and not to permit sympathy to influence that decision. Such an instruction did not constitute "undue pressure, threats, embarrassing assertions, or other wording that would tend to force a decision or cause a juror to abandon his conscientious dissent and defer to the majority." *Id*. at 282 (quotation marks

---

[7] We acknowledge that "a proper *Sullivan* instruction may be given as part of the main charge to the jury." *People v Goldsmith*, 411 Mich 555, 557; 309 NW2d 182 (1981). However, that is not the issue before us. The issue raised by defendant in this case concerns only the trial court's response to the jury's note, both of which are quoted above in the body of our opinion.

and citation omitted). Defendant, having failed to establish plain error requiring reversal based on the trial court's supplemental jury instruction, is not entitled to relief on this issue.

Affirmed.

/s/ Michael J. Kelly
/s/ Karen M. Fort Hood
/s/ Stephen L. Borrello